## CHARLOTTE T. HARRISON et al. *vs.* JAMES W. DENNY et al., TRUSTEES.

*Devise and Legacy—Estimate of Value of Bequest—When Legatee or Devisee Entitled to Income—Distribution in Kind of Trust Estate Disposed of Under Power of Appointment—Implied Power of Sale by Trustee—Demonstrative Legacy—Interest on Legacy.*

When to an absolute devise of definite real property the testator adds, "this property I estimate to be equivalent to about $12,500," that expression in nowise limits the interest of the devisee in the property to the amount of the estimate.

The devisee of land is entitled to the income from it from the time of the testator's death, less expenses properly chargeable against it.

Certain property was given by will to trustees to hold for the benefit of testator's daughter Louisa during her life, and in the event of her death without issue to be held in further trust for such of the testator's children or their descendants, in such proportions, and for· such estates therein, as Louisa should by last will limit and appoint. Out of the trust property, Louisa was also authorized to dispose absolutely by will of the sum of $10,000. By her will, made in due execution of the power, she· gave certain real property to one niece and pecuniary legacies to others, and also provided that trustees should set apart the sum of $10,000. out of the trust property, and this sum she gave to Bishop R. *Held,* that the trust did not terminate upon the death of the life tenant, but the trustees had the further duty to perform of turning the estate over to the legatees in accordance with her will.

*Held,* further, that the trustees are not entitled to ask for a sale of the property for the purpose of partition, but it was the intention of the testatrix that the trustees should settle the pecuniary legacies by turning over property of the estate

to the legatees, and if the legacies could not be satisfied in this manner, the trustees have implied authority to sell so much of the estate as may be necessary to pay the legacies or to equalize them.

*Held,* further, that the legacy of $10,000. to Bishop R should be satisfied by setting apart property valued at that sum, or if that precise amount cannot be so ascertained, sufficient property may be sold to adjust the difference.

*Held,* further, that after the satisfaction in this manner of the special legacies, it is the duty of the trustees to transfer the balance of the estate in their hands to the residuary legatees and devisees by appropriate instruments according to the nature of the property.

An equitable life tenant, with power of appointment by will, gave a sum of money to a niece, her heirs, executors, etc., absolutely, "being part of the proceeds" of a designated lot of ground "burned in the great fire of February, 1904." A lease of part of the lot was made after the fire. *Held,* that this lease, by a capitalization of the rent and the investment made of the money received from the fire insurance on the property, should be paid to the legatee, together with such additional sum as may be necessary to make up the amount of the legacy.

A gift by will of a designated sum of money, followed by a statement that it is in the place of certain property destroyed by fire, or the proceeds of such property, is a demonstrative legacy, and should be paid from the investments in hand of the proceeds of that property, if they can be traced, not exceeding the amount of the legacy, and if these investments do not equal that amount, the balance should be paid out of the general estate.

And, under the circumstances of this case, the legatee is entitled to the income from those investments from the death of the testatrix.

The general rule that legacies are payable after the expiration of one year from the testator's death, unless otherwise provided, and that interest begins from that time, is not applicable when the will is made in the execution of a power of ap-

pointment, and the legatees under it are entitled to a distribution in kind of the property concerned.

*Decided June 22nd, 1910.*

Appeals from the Circuit Court of Baltimore City (HEUISLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, THOMAS, PATTISON and URNER, JJ.

*Frederick W. Story,* for Charlotte T. Harrison *et al.,* appellants.

*John Hinkley,* for Lillie T. White, appellant and appellee.

*F. Howard Warfield,* for Mary T. Bacon *et al.,* appellants.

*James W. Denny,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

In 1863, Robert A. Taylor, of the City of Baltimore, died, leaving a last will and testament by which, amongst other devises and bequests, he left a portion of his estate to four trustees, their survivors and successors, for the benefit of his daughter, Louisa C. E. Taylor, during her life, and conferred upon her certain powers of disposition of the remainder. which will be hereinafter referred to. The other three trustees having died, the survivor, William Pinkney Whyte, filed a petition in the lower Court on May 25, 1898, to have a co-trustee appointed, as the will provided that, in the event of vacancies reducing the number below two, the remaining trustee should apply to a Court of Equity to fill the vacancy or vacancies so that there would always be two trustees in each instance provided for in the will—there being other trusts besides the one now before us. Charles F. Taylor was accordingly appointed co-trustee with Governor Whyte.

and upon the death of Mr. Taylor, J. Bernard Scott was appointed in his place.  After the death of Governor Whyte in 1908, on the recommendation of Mr. Scott and Louisa C. E. Taylor, James W. Denny and The Fidelity Trust Company were appointed co-trustees.  Mr. Scott was at his own request afterwards relieved from the trust leaving Mr. Denny and The Fidelity Trust Company who continued to act until the death of Louisa C. E. Taylor.

On April 16, 1909, the two trustees filed a bill in equity in the Circuit Court of Baltimore City, with leave of the Court, which states it is "supplementary to and in the pending trust estate of Louisa C. E. Taylor now being administered under the jurisdiction of this Court."  In that bill the history of the trust is given, including a reference to an auditor's account showing of what the corpus consisted.  It is alleged that Louisa C. E. Taylor died on January 21st, 1909, unmarried, but leaving a last will and testament, by which she executed the power of disposition given to her under the will of her father of the property held in trust for her under sections 26 and 27 of his will.  A copy of her will, which is dated May 29th, 1908, is filed with the bill, a description of the property held by the trustees under sections 26 and 27 is given, and it is alleged that the real and leasehold estate belonging to said trust is not susceptible of partition and cannot be divided without loss and injury, and that it is for the best interest and advantage of all the parties that all the trust property, real and personal, belonging to the trust estate be sold, and the proceeds be divided between the parties entitled thereto, in accordance with the will of said Louisa C. E. Taylor and under the jurisdiction and control of the Court.

The bill then prays that a decree may be passed authorizing the plaintiffs, or such other trustees as the Court may appoint, to convey the property known as 130 W. Pratt street to Lillie T. White, and to sell the remaining property, real and personal, belonging to the trust estate, either at public or

private sale, and to make distribution of the proceeds under the direction of the Court.

Some of the defendants filed answers admitting the matters and facts set out and consenting to such decree as may be right and proper.  Lillie T. White and Louisa Taylor White demurred to the bill, but, the demurrer being overruled, they answered, the latter stating she had no interest in the estate beyond a legacy of $5,000, which she was willing to accept either in cash or in stocks and bonds, and Mrs. White denying that the trustees any longer had any interest in the trust estate beyond turning it over to those entitled to it, or that they had any right to have the property sold, and alleging that it could be divided in kind.  Louisa S. Taylor and Mr. and Mrs. Harrison filed an answer which we need only say denies any right of the trustees to do anything more than turn over $10,000 of the property to Bishop Randolph in payment of a legacy to be hereinafter referred to, and alleges that the property can be allotted in kind.  A cross-bill was also filed by Louisa S. Taylor and Mr. and Mrs. Harrison asking that the trustees be required to file a memorandum of their receipts and outlays since the last auditor's report; that the executors of Louisa C. E. Taylor be required to answer; that there be a construction of the clauses of the wills of Robert A. Taylor and Louisa C. E. Taylor which affect the trust; that all final proceedings be delayed until such construction, and they pray for general relief.  It will not be necessary to discuss separately the two bills or any of the pleadings.

By section 19 of his will Robert A. Taylor directed all the rest, residue and remainder of his estate (excepting certain property mentioned) to be divided into four equal parts or shares, and he directed how they should be disposed of.  Sections 20 to 25, inclusive, are not in the record, and we suppose they refer to property left to other children of the testator.  Section 26 directs that certain properties, real and personal, be held by the trustees for the benefit of his daugh-

ter Louisa for life, and then provides for various contingencies after her death. As that was the contingency which happened, we need only state the provision in case she left no child nor descendant. In that event the will says that "the said estate and property embraced in this section of my will is to be held by the said trustees * * * or their successors, as aforesaid. In further trusts, to and for such of my other children, or his, her or their descendant or descendants, and in such proportions and for such estate or estates therein, in fee, or for a less estate, and with such limitations and conditions as my said daughter, Louisa C. E. Taylor, may, by her last will and testament, * * * name, limit and appoint to take the same "

By section 27, the testator directed that the balance of the fourth part of the rest of his estate bequeathed and devised in trust for his daughter be disposed of in the same way as that previously mentioned, and provided that in case his daughter deemed it proper, she was authorized and empowered to limit and appoint out of the said one-fourth part of the rest and residue of his estate the sum of ten thousand dollars to and for such person or persons as she might by her will name and appoint.

Louisa C. E. Taylor died unmarried, and hence without child or descendant, and left a last will and testament in which she expressly referred to the power of disposition and control given her by her father's will, and by Items 2 (two), 3 (three), 4 (four), 5 (five), 6 (six) and 7 (seven) left devises, legacies and bequests to persons who are admittedly descendants of her father's other children (and hence included in the power), and by Item 8 (eight) she left the $10,000 authorized by section 27 of her father's will to Bishop Randolph, with the request that he pay the same to the trustees of the Protestant Episcopal Theological Seminary and High School, Fairfax County, Virginia. Then by Item 26 (twenty-six) she left to her four nieces, Louisa S. Taylor, Charlotte T. Harrison, Mary T. Bacon and Lillie Taylor White, all the

rest and residue of her estate, whether in pursuance of the power of disposition conferred on her by section 26 of her father's will, or otherwise, or whether the same be her own property, to be divided among them, share and share alike, their heirs, legal representatives and assigns, absolutely and forever.

It is conceded that the will of Louisa C. E. Taylor is a valid execution of the powers of disposition given her by the will of her father, and the two trustees, who are appellees, as the successors of the four named in the will of Robert A. Taylor, unquestionably have all the powers and authority which the four would have had if they had survived Louisa C. E. Taylor. As they differ in some material respects from the others items, we will first consider Items 2 (two) and 8 (eight) of Miss Taylor's will.

1. Item 2 (two) states that in execution of the power, and in her individual capacity so far as the property is owned by her, "I give, devise and bequeath the fee simple property, being the lot and improvements known as No. 130 West Pratt street, in the City of Baltimore, to my niece, Mrs. Lillie T. White, daughter of my deceased brother, Henry S. Taylor, her heirs, executors, administrators and assigns absolutely and forever." As that property was held in fee by the trust, it was undoubtedly devised in fee to Mrs. White, unless the provision which immediately follows qualified it, as is contended by some of the appellants. That provision is: "This property in fee simple hereby given to Mrs. Lillie T. White I estimate to be equivalent to about twelve thousand five hundred dollars ($12,500)." But under no rule of construction that we are aware of can that expression be held to limit or to be intended to limit the interest of Mrs. White in that property to the amount of that estimate. As the testatrix gave, by other items of her will, $12,500 to each of three other nieces, who were also daughters of her deceased brother, Henry S. Taylor, it is manifest that she only intended to show that by her estimate the value of the property left Mrs. White was about

what she was leaving to each of the other three nieces. As the devise took effect from the date of the testatrix's death, the devisee was entitled to it, and hence to the income from it from that time, deducting of course all proper expenses chargeable to it. The deed is not in the record, but we understand it to be admitted that the property stands in the names of the trustees who were such at the time it was conveyed, and hence it is proper that the appellees, as their successors, convey it to Mrs. White.

2. The gift by Item 8 (eight) to Bishop Randolph also seems to be free from difficulty. After reciting the power given her by her father's will authorizing such a bequest, the will of Miss Taylor proceeded: "I therefore elect that the present trustees, the Fidelity Trust Company and James W. Denny, * * * shall set apart the sum of ten thousand dollars ($10,000) out of my property or stocks I may own or possess, held by them under the trust, to the extent of ten thousand dollars," and in execution of the power conferred on her by section 27 of her father's will she then went on to "give, devise and bequeath the said sum of ten thousand dollars" to Bishop Randolph.

The testatrix clearly intended by that item that the trustees should set apart $10,000 worth of the trust property for this bequest. Mr. Taylor authorized her to limit and appoint out of the fourth part of his estate left for her benefit the sum of $10,000 of the principal of said fourth in such real or personal estate as she may elect, to be valued by the trustees, and Miss Taylor repeated that authority of her father, and elected that the present trustees should set apart the sum "out of my property or stocks I may own or possess, held by them under the trust to the extent of" $10-000.00. It was not merely a legacy of $10,000.00 in money out of the proceeds of sales of her property, but it was manifestly intended by Mr. Taylor and by Miss Taylor that the trustees should set apart property which they valued at that sum. There can be no reason therefore why property

should be sold for the purpose of paying that legacy. Such a sale would necessarily add to the costs and expenses connected with the settlement of the estate. Of course, if it is impossible to get the precise amount of the legacy out of the property which the trustees will set apart, the difference can be adjusted in cash and, if necessary to do that, sufficient property can be sold. There can be no great difficulty in arranging that.

3. Having disposed of those two items, which seem to us to be free from what has given rise to much of the controversy in this case, we will before taking up the other items of Miss Taylor's will pause to consider the position taken by some of the appellants—that all the duties of the trustees ceased upon the death of the life tenant. We need not repeat what we have said about the two items above mentioned, in both of which some active duties are required by the trustees, as indicated. While we are ready to admit that such duties as were required of the trustees during the life of Miss Taylor are no longer imposed upon them, we cannot concur in the broad assertion that they have no duties to perform. They are certainly required to turn over the estate to some person or persons, and it is equally clear that it is their duty to turn it over to those entitled to it under the will of Miss Taylor, it being conceded that the provisions of her will are in pursuance of the powers conferred by her father's will. Neither Mr. Taylor nor Miss Taylor gave authority to anyone other than the trustees to pay the legacies, and as the property (with the possible exception of some Mr. Taylor held in his lifetime) is in the names of the trustees, or held by them as the successors of the others, it would have been a useless and more expensive course to have pursued, if either Mr. Taylor or Miss Taylor had directed anyone other than the trustees to pay the legacies. Whether paid in cash or in kind, the trustees must act. The legacies are of such number and of such different amounts as to make that necessary. Each of two of the legatees only gets $2,000 and one gets $16,500 in

addition to one-fourth of the residue, and of course the trustees cannot properly hand over all of the trust property to all of the legatees and devisees jointly or as tenants in common.

We hold, therefore, that the trustees are required to still perform some duties—whether they be called active or something else—as they must pay the legacies, and, that being so, it is manifest that they may have to sell some of the property in their hands in order to enable them to pay out all, and no more, that each legatee is entitled to. Again, if they cannot divide the property so as to do the full justice to all, and the legatees will not help them by agreeing to a division, what can they do but sell and pay the legacies in cash? Of course we do not mean to apply that question to such legacy or legacies as we determine the will provides or intends shall be paid in a certain way or by turning over certain investments and properties. But there are four legacies given by Items 1, 6 and 7, amounting to $13,000 of principal, which the will does not in terms direct how they are to be paid, or out of what property. Then in order to give one or more of the legatees named in Items 3, 4 and 5 the amounts of their respective legacies ($12,500 each) it may be necessary to give them, or some of them, property or cash in addition to what we hereinafter hold shall be turned over to them. And, as we have already said, it may be necessary to pay some cash to Bishop Randolph in order to make the precise amount of his legacy. What we mean, therefore, is that as the trustees are to pay the legacies in the manner we herein determine, they have the power to make such sales, and only such, as are necessary for that purpose. As all of the parties are of age and all are represented by counsel, questions arising in connection with those matters ought to be readily adjusted between them and the trustees, but if they cannot be the Court below can determine them in pursuance of this opinion. That Court can pass all orders and decrees not in conflict with this opinion which may become necessary or

proper in the further progress of the proceedings. We would add that it is not our judgment that the trustees have such interest in the property as to entitle them to ask a sale on the ground that the property is not susceptible of partition, as contemplated by section 129 of Article 16 of the Code, as the bill seems to indicate was at least one theory upon which it was filed, but as it was manifestly the intention of the testatrix in executing the powers given her by her father that the trustees pay or settle the legacies, we are of the opinion that they have the implied authority to do what is necessary to that end, provided of course that they do not conflict with the provisions of the will in respect to any of the legacies or devises. That conclusion is not in conflict with any of the cases cited by counsel, and is in accord with the intention of both Mr. and Miss Taylor as indicated by their wills. Having sufficiently stated our views on that general question we will now consider the other legacies in Miss Taylor's will.

4. Items 1 (one), 6 (six) and 7 (seven) can be considered together. By Item 1 (one) the testatrix gave to Louisa S. Taylor, "the sum of four thousand dollars ($4,000) absolutely;" by Item 6 (six) to Louisa Taylor White "the sum of five thousand dollars ($5,000) absolutely;" and by Item 7 (seven) to Katherine A. Taylor and Mrs. Mary Mc-Evers Tucker "and to each one of them, their legal representatives and assigns, absolutely, the sum of two thousand dollars ($2,000)." There is no indication in either of those items of any intention to give those legacies out of any particular part of the estate, or of making them anything more than general pecuniary legacies. But Item 1 (one) of the will begins by saying: "Out of the estate over which, under the last will and testament of my father, Robert A. Taylor, deceased, I have the power of disposition and control by my will, and in execution of said power, I give," etc., and the following six items begin with substantially the same language. When that is considered in connection with the provisions of the will of Robert A. Taylor, we are of the opin-

ion that, if it can be done, these legacies should be paid in kind. It is true the will of Miss Taylor says: "All such legacies shall be paid without unnecessary delay, and when paid, excepting those to my several nieces, shall be paid with interest at five per cent. from the date of my death," but the interest can be added to the principal sum. The testatrix nowhere directs or expressly authorizes the trustees to sell the securities, which presumably she would have done if she had intended them to be paid in cash, whether that was necessary or not. She did in the same will authorize her executor and executrix to sell all of her individual property, real, personal and mixed, for the purpose of the distribution of her estate or for any other purpose, and to execute all acts, deeds and conveyances incident and necessary to the settlement of her estate, but when she was dealing with this property left by her father in trust, she knew, of course, she could not properly give her own executors that authority, but did not direct the trustees in that respect. It is therefore evident that she expected the trustees to settle these legacies by turning over property to the legatees, when that could be done, but if it cannot be done, notwihstanding she made no express provision for it we are of the opinion that the trustees have implied authority to sell, in so far as that may be necessary to pay them, and what we have said above is sufficient on that subject.

5. This brings us to Items 3 (three), 4 (four) and 5 (five). By them she gave to each of three nieces, "her *heirs,* executors, administrators and assigns absolutely the sum of twelve thousand five hundred dollars ($12,500)." That is followed in Item 3 (three) (the gift to Louisa S. Taylor) by the words, "being part of the proceeds of property on Charles and German streets, in the City of Baltimore, which property was burned in the great fire of February, 1904;" in Item 4 (four) (the gift to Charlotte T. Harrison) by, "being the proceeds, or part thereof, of the property No. 13 German street, which was destroyed by the fire

of 1904 and taken by the City of Baltimore for the bed of said widened street;" and in Item 5 (five) (the gift to Mary T. Bacon) by, "being in place of No. 219 South street, which was destroyed in the great fire of 1904." When it is remembered that by Items 3 (three), 4 (four) and 5 (five) of her will the testatrix gave to each of her three nieces the sum of twelve thousand five hundred dollars, and spoke of it as above stated, and that by Item 2 (two) she had given the real estate on Pratt street, which she estimated to be equivalent to about that sum to another niece, and when we see that in each of the four items she used the terms, *"heirs, executors, administrators and assigns absolutely,"* it would seem that the testatrix understood the gifts in Items 3 (three), 4 (four) and 5 (five) to be in some way connected with real estate. The properties referred to in the three items were owned by Robert A. Taylor in his life time, were real estate and were included in section 26 of his will.

6. The legacies in Items 3 (three) and 4 (four) are clearly demonstrative legacies. As in Item 3 (three) the expression "being part of the proceeds of property on Charles and German streets," etc., immediately follows the amount given to Louisa S. Taylor, it would be difficult to give to it any meaning unless it was intended by the testatrix to indicate that the proceeds of that property were, to the extent of $12,500, to be appropriated to the payment of that legacy. That view is strengthened, if not made conclusive, when the circumstances under which the will was made are remembered. With the bill of the trustees there was filed as an exhibit a lease dated October 19, 1904, and executed by Governor Whyte and Mr. Scott, who were then the trustees, parties of the first part, Louisa C. E. Taylor of the second part, Louisa A. Taylor of the third part and Elizabeth C. Gaddess of the fourth part. It is a lease to Mrs. Gaddess for ninety-nine years, renewable forever, of the part of the Charles street lot which was left after the City of Baltimore had condemned and acquired a portion

for widening the street. It also recites that Louisa C. E. Taylor had, in execution of the power given her by her father's will, made her will in which she named and appointed Louisa S. Taylor as the person to take that property after her death, that the Court had passed an order authorizing the trustees to unite in the lease, that Louisa C. E. Taylor covenanted not to change her will, "so far as the same pertains to the disposition of the property hereinafter described, and has further requested the said Louisa Schroeder Taylor to unite in the execution of these presents assenting thereto, which the latter agrees to do, as evidenced by her signature hereto." The evidence shows that Miss Taylor had previously made a will, but after the fire made the one now before us. Some money was collected from the insurance on the building on this lot destroyed by the fire of 1904, and some was collected by the trustees from the city for the part of the lot taken by it. The money received from those sources was invested by the trustees, as we understand from the record. It would seem to be clear, therefore, that the testatrix intended this legacy of $12,500 to be paid out of what was realized from that lot, and inasmuch as the lease was made as stated, the ground rent created thereby should be assigned to Louisa S. Taylor as a part of the $12,500. As the lower Court has given its sanction to that lease, to which the trustees, the testatrix and this legatee were all parties, the Court should, in its supervision over the trust, see that the reversion is distributed to Louisa S. Taylor, as justice to her and the lessee requires, and we have no doubt that such was the intention of the testatrix. If the investments of the insurance money and that received from the city can be traced, as we assume they can, then so much of them as will be necessary to make up the $12,500 after the ground rent is capitalized ought to be turned over to her in payment of this legacy. If all fall short of the amount she will be entitled to have it made up out of the trust estate, as there is ample to pay all legacies.

7. So in Item 4 (four) the amount of the legacy is followed by "being the proceeds, or part thereof, of the property No. 13 German street," etc. Much of what we have said in reference to Item 3 (three) applies to this, although by reason of the lease, that item is perhaps more easily disposed of, but the lease reflects upon the intention of the testatrix as to all of these three legacies, as she evidently had the same general intention as to the three. Some insurance money was collected as was what the city owed for the part of the lot it took. There is still a portion of the lot left. The testatrix's intention was evidently to pay the amount of the legacy out of what was realized from that lot so far as the proceeds would go. She did not devise the rest of the lot to Mrs. Harrison, and there is nothing to show, as there is in the case of the lease in which Louisa S. Taylor united, that the testatrix intended that she must take the rest of the lot as part of the legacy. If it is unproductive and not desirable, it would not be right to require her to do so, but, of course, if she is willing to take it at a price agreed upon, it could and should be allotted to her, if it will not be more than the legacy to her. As it is a demonstrative legacy of the proceeds of the property, the investments in hand from it, if they can be traced, should be turned over to her, not to exceed the $12,500. If those investments do not amount to that sum she will be entitled to have the balance paid out of the other property.

8. Although Item 5 (five) differs from Items 3 (three) and 4 (four) in that the expression following the amount of the legacy is, "being in place of No. 219 South street," we think that is also a demonstrative legacy. The whole of that lot was taken by the City, and hence the testatrix spoke of it differently from what she did of the other two, but it is clear that she intended the investments of money received from that lot to go to Mrs. Bacon, not to exceed the $12,500. If they fall short of that sum, the balance must be made up out of the other property.

9. Inasmuch as the estate is ample to pay all legacies, it would be of but little importance whether the three legacies included in Items 3 (three), 4 (four) and 5 (five) are demonstrative or not, did not that reflect on the question whether the trustees should be permitted to sell the investments covered by those items. And as we are of the opinion that the testatrix intended the investments made from the proceeds of these respective properties (and we include, under the circumstances, the lease above mentioned in the term "proceeds") to be allotted to the respective legatees, another question of some importance to them is made clearer—that is, whether any interest, income or increment is to go to those legatees. Demonstrative legacies partake of the nature of both specific and general legacies in some respects. If these were specific legacies the income and increment would go to the legatees from the death of the testatrix, and while we do not mean to say that such is usually the case with demonstrative legacies, we are of the opinion that under the peculiar circumstances of this case, the legatees in Items 3 (three), 4 (four) and 5 (five) are entitled to the income from the respective investments to be turned over to them from the death of the testatrix, deducting of course such costs and expenses as are properly chargeable to them. It is quite certain from expressions in both wills that she did not intend to postpone the payment of the legacies until one year after her death. The general rule in reference to legacies being payable at the end of one year from a testator's death, unless the will fixes the time, and that interest begins from the time they are payable, was established for convenience, and to enable executors to ascertain the condition of the estates, collect the assets, etc., but in this case these legacies did not depend upon the settlement of Miss Taylor's estate, and her executors had nothing to do with them. She was simply naming and appointing the persons who were to take the property at her death. Mr. Taylor's will shows it was his intention that the trust property should be enjoyed by those

whom his daughter named immediately after her death. Neither of them could have contemplated that it would take a year to pay these legacies, and the reasons for waiting a year in ordinary cases do not apply here. Were it not for the statement in *Graham* v. *Whitridge,* 99 Md. 294, that Mrs. Whitridge and the Misses Brown "are entitled to interest on their respective legacies from a period of time when those legacies are payable—that is to say, from one year after the death of Mrs. Greenway, she not having stood towards them *in loco parentis"*—we would suppose there could be no doubt about the vesting of these legacies at an earlier date than one year after the death of Miss Taylor, who was simply executing a power given in her father's will, but without stopping to look for other differences which may exist between that case and this, as we have said that the intention of Miss Taylor was to allot the investments spoken of to these respective legatees, and as she had left by the preceding paragraph property to the other niece in a way which carried the rents and profits from her death we are of the opinion that these three legacies so far partake of the nature of specific legacies as to entitle the respective legatees to the income from them from the death of the testatrix, and that at any rate such was the intention of the testatrix.

10. We are also of the opinion that under Item 25 (twenty-five) five per cent. interest from the death of the testatrix is payable on the legacies not included in Items 2 (two), 3 (three), 4 (four) and 5 (five), as the testatrix evidently had in mind by the exception she made those nieces who were mentioned in those items. We understand the other parties in interest to consent to that construction, although not perfectly free from doubt as to those legatees who are nieces. That construction also applies to the collateral inheritance tax referred to in that item.

11. After payment of the legacies above mentioned, and the expenses, the residue of the trust estate should be turned over to the residuary legatees and devisees. Paragraph (6)

of the decree of January 11, 1910, correctly states the proper construction of the will in reference to the residue of the estate.

12. We are also of the opinion that there was error in passing the decree of February 23, 1910. An appeal had been entered from the decree of January 11, 1910, by Mrs. Harrison and Miss Louisa S. Taylor, who were not only entitled to large legacies, but were two of the residuary legatees and devisees. The day after the last decree was passed Mrs. Bacon. who is one of the residuary legatees and devisees, and also entitled to a legacy of $12,500, entered an appeal from both decrees. The parties interested, especially as they had such large interests, had the right to have the decree of the lower Court reviewed, and as the time in which they could appeal under the rules of this Court had not expired, the decree of February 23, 1910, providing for the sale of the property to pay the legacies ought not to have been passed, but beyond that our views as to the first decree would require a reversal of the second.

13. We do not deem it necessary or proper to determine in this case whether the acceptance of the legacy of $4,000 by Louisa S. Taylor would extinguish the indebtedness of that amount due to her by her aunt. That indebtedness is not due by the trust estate, but was an individual debt of Louisa C. E. Taylor, while the legacy is to be paid out of the trust estate. The question suggested by some of the parties is not whether the legacy is to be paid, but whether the debt can be collected if she accepts the legacy. While we are of the opinion that the trustees had the right to ask the guidance and direction of the Court having jurisdiction of the trust and to have its supervision and aid in the payment of the legacies, the individual estate of Louisa C. E. Taylor could not properly be brought into this case. That remark also applies to the Cathedral street property, which is dealt with in paragraph (7) of the first decree.

Our conclusions on the main points before us may be thus summarized:

*a.* Paragraphs (1) and (2) of the decree of January 11, 1910, correctly provided for the Pratt street property left to Lillie T. White.

*b.* The trustees should set apart property of the value of $10,000, with five per cent. interest thereon from the death of Louisa C. E. Taylor, and transfer it to Bishop Randolph. If necessary, cash can be realized and paid to make the precise amount.

*c.* The trustees should transfer and convey the investments held by them of the proceeds of the Charles street, German street and South street properties to the respective legatees mentioned in Items three, four and five of Miss Taylor's will, as hereinbefore stated, and can pay any balance due on them with other property or with cash out of sales if any be necessary to be made in order to obtain the precise amounts of the respective legacies.

*d.* The trustees should settle the legacies in Items one, six and seven of that will with securities and properties in hand as far as can be done, but if they cannot arrange with those legatees to accept their legacies in securities, ground rents, &c., they can sell sufficient of the trust property to pay them.

*e.* The legatees in Items two, three, four and five of the will of Louisa C. E. Taylor are entitled to the income received from the respective properties and investments to be transferred, assigned or conveyed to them as hereinbefore stated since the death of said testatrix, subject to all proper charges thereon.

The other legatees are entitled to five per cent. interest on their respective legacies from the death of the testatrix, subject to such charges.

*f.* After payment of the aforementioned legacies and the costs and expenses connected with the settlement of the trust estate, including the costs in this case above and below, the rest, residue and remainder of the real and personal prop-

erty constituting the trust estate shall be transferred, assigned, conveyed and delivered to the four residuary legatees and devisees as tenants in common by suitable instruments or acts, according to the nature of the property.

*g.* That in the decree to be passed by the lower Court, the trustees can be authorized to convert into cash so much of the investments in their hands not otherwise disposed of or to be set apart as determined by this opinion, as may be necessary to pay the precise amounts of the respective legacies and the costs and expenses connected with the trust estate and the settlement thereof, and should be authorized to execute and deliver proper deeds, assignments and transfers to the parties entitled to the same under this opinion.

*h.* That the decrees of January 11, 1910, and February 23, 1910, be reversed and the cause remanded in order that a decree may be passed in accordance with this opinion, and, if found by the lower Court to be necessary or desirable, that the cause be referred to an auditor to state an account between the trustees and the trust estate, making distribution of the estate in accordance with this opinion and the decrees and orders of the lower Court passed in conformity thereto.

> *Decrees reversed, and cause remanded for further proceedings in accordance with this opinion, the costs, above and below, in each of the appeals to be paid out of the trust estate by the trustees.*