# HERBERT R. PRESTON vs. THE SAFE DEPOSIT AND TRUST COMPANY.

*Equity; jurisdiction; supervision of trusts. Court of Appeals; appeal from equity proceedings; not bound by allegations in bill. Trustees; powers of sale; express and implied powers; presumption in favor of exercise of power. Sales under power in a will and under the Acts of 1868, Chapter 273.*

The supervision or the administration of trusts is a well recognized ground of equity jurisdiction.                      p. 216

Where there is an appeal from a decree of a court of equity, the Court of Appeals is not bound by the allegations in the bill, whether they be of fact or conclusions of law.     p. 216

The express powers of sale given to a trustee in a will do not necessarily negative the implied powers.                  p. 216

No particular form of words is necessary to constitute an implied power of sale in trustees.                           p. 216

Such a power may be derived either from the language used, which necessarily implies its exercise, or from the fact that the use of such power is essential in the carrying out of the objects and purposes of the testator, or it may be manifest from the examination of the entire will that it was the intention of the testator that such a power should be vested in and used by his executors or trustees.                    p. 217

Where one having various capacities executes an authority, delegated to him in one of those capacities, the law will attribute the act to the proper authority, although the person does not profess to exercise it in virtue of that particular power.                                         pp. 219-220

Where a trustee under a will had the implied power and authority to make sales of the trust estate, the fact that the trustee applied for a decree under the Act of 1868, instead of making the sale under the implied powers of the will, does not affect the validity of the sale.                    p. 218

To give a court of equity jurisdiction under the Act of 1868, Chapter 273 (Article 16, section 213, Code of Public General Laws of 1904), to decree the sale of property so as to bind the interest of after-born parties, it must appear that the sale was advantageous to the parties at the time of the decree.                                         p. 215

In general, a decree in such a sale authorizing sales to be made from time to time, upon application to be thereafter made to the Court, as the occasion might arise, does not conform to the conditions of the Acts of 1868, Chapter 273.

p. 215

*Decided June 24th, 1911.*

Appeal from the Circuit Court No. 2 of Baltimore City (STUMP, J.).

The cause was argued before BOYD, C. J., PEARCE, BURKE, URNER and STOCKBRIDGE, JJ.

*Herbert R. Preston,* for the appellant.

*D. K. Este Fisher,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The case comes before the Court upon an appeal from an order of the Circuit Court No. 2 of Baltimore City overruling the exceptions of the appellant, filed to a sale reported

as made to him, of certain property known as "Belle Grove," in Baltimore county.

The exceptions, four in number, all turn upon two questions; the power of the Circuit Court No. 2 to decree the sale of the property under which decree the sale of "Belle Grove" purports to have been made, and, whether or not there was an implied power of sale contained in the will of the late Darius C. Howell.

A concise statement of certain facts will aid in reaching a correct conclusion.

Darius C. Howell died in the year 1887, leaving a last will and two codicils, executed in conformity with the statute, for the passing of both real and personal property. The will is quite long, but the essential features of it may be briefly summarized. The first clause bequeaths certain personal chattels and furniture to his wife, Katherine E. Howell; the second clause gives to her during her widowhood his residence in Baltimore City, and his country residence, "Belle Grove," and further provides that upon her second marriage or death, the same should constitute a part of the residuum of his estate. By the third clause he gave a half interest in certain property in Baltimore City to a granddaughter, Edith Howell, for life, with remainder to her children and descendants, her surviving, with cross-remainders among them, and in default of such descendants or their death within a named period, then to another granddaughter, Florence, for life, with remainder in like manner to her children and descendants, and in default thereof the same to constitute a part of the residuum of his estate. The fourth clause of the will contained similar provisions with regard to the grand-daughter Florence. The fifth or residuary clause of the will devised and bequeathed the balance of his estate to certain named trustees, for whom the present appellee was substituted as trustee by the first codicil to the will. The trusts created by this clause were to provide an income for his wife, Katherine E. Howell, of $15,000 per annum, during her widowhood, and for the support and

education of his child or children, with a further provision that if his widow should remarry that her income should be reduced to the sum of $6,000. The will further provided for the payment over to the testator's children upon their attaining a certain age, and that in case all of the testator's children should die under the age of twenty years, without leaving issue living at the time of his or her death, that then the residue should be divided between the two grand-daughters already named, and the testator's brothers and sisters, and their heirs, executors and administrators in such shares as his widow, Katherine E. Howell, should appoint by her will, and in the event of the failure of his widow to exercise such testamentary power of appointment, then for division, one-half to the two grand-daughters, and the other half to his brothers and sisters in equal shares, and to their heirs, executors and administrators.

In 1895 the Safe Deposit and Trust Company, the trustee under the will, and Katherine E. Howell, the widow, filed the bill of complaint in this case, in which ·there were made as parties defendants all persons then *in esse* who had, or who might have or be entitled to, an interest under the terms of Mr. Howell's will and who then numbered approximately one hundred persons, many of them non-residents. The bill was manifestly intended to be filed under the Act of 1868, for it alleges that the relief sought will be to the interest, benefit and advantage of all persons concerned, and further alleges that "that there is no power vested in said trustee to dispose of any of said property other than the property on Charles Street avenue and only that property in the manner and on the terms mentioned in his will."

The relief prayed in the bill was that the Court should assume general jurisdiction over the administration of the trusts created by said will, and of all the estate of the testator, and that a decree might be passed for the sale or lease of the property or such parts thereof as the Court may decree to be sold, and at such times and upon such terms as the Court might from time to time direct; that a certain

exchange with Blanchard Randall for the straightening of
lines be ratified, and for general relief.

The case proceeded to decree, which was passed on the
24th February, 1896, and by which, in consonance with the
relief prayer in the bill, the Circuit Court No. 2 of Baltimore
City assumed "general jurisdiction over the administration
of the trusts under the last will and testament of Darius C.
Howell, late of Baltimore county, deceased, and the codicils
thereto, and of all the property and estate of said testator,"
and decreed that the trustee should thereafter administer
the trusts created by said will under the direction of the
Court. It also contained the following clause: "And it is
further adjudged, ordered and decreed that all the property
and estate of said testator be sold or leased in such parts
and in such manner and at such times as the Safe Deposit
and Trust Company of Baltimore, which is hereby appointed
trustee to make said sales or leases, may deem most advan-
tageous to the persons beneficially entitled, but subject to
the ratification and approval of this Court."

About fifteen years elapsed from the passage of this decree
until the report of the sale which gives rise to this appeal,
and it is now contended by the appellant that the Circuit
Court was without power to pass such a decree as it did, and
reliance is placed upon the decision of this Court in the
case of *Ball* v. *The Safe Deposit and Trust Co., 92* Md. 503.
In that case a decree was held to be objectionable which
authorized sales to be made from time to time, upon applica-
tions to be thereafter made to the Court as occasions might
arise, and whenever it should appear to the Court that such
sales would be advantageous, for the reason that to conform
with the statute the advantage must appear to exist at the
date of the decree. That in this case it was not so beneficial
at the time when the decree was passed is a legitimate infer-
ence from the fact that the trustee allowed fifteen years to
pass after the date of the decree, before the sale now in
question was reported, and so far as that decree was pre-

dicated upon the Act of 1868, it was open to the identical objection with the decree in the *Ball Case, supra.*

The supervision of the administration of trusts is a well recognized ground of equity jurisdiction, and so much of the decree as assumed jurisdiction over the administration of the trust estates created by the will is not open to any legitimate criticism.

The bill had alleged the non-existence of any power of sale in the will except for a designated piece of property on Charles Street avenue, which was not this lot, or for certain specified purposes, and the present is undoubtedly not one of such purposes.    But this Court is not and can not be bound by the allegations of a bill, whether they be of fact or conclusions of law.    It can properly enquire into all questions of fact or law properly presented by the pleadings or evidence.    It is, therefore, in the present case fully within the province of this Court to examine and determine whether the will of Darius C. Howell contained any power of sale other than those expressly declared and already alluded to. It was suggested rather than urged in the brief of the appellant that the existence of express powers would operate to negative any implied power of sale.    This is not the law. In the case of *Hamilton* v. *Buckmaster,* L. R. 3 Ch. 323, where a testator by the terms of his will directed the sale of all his personal estate, the power of sale was held to extend to a freehold estate owned by him at the time of his death, where the exercise of such power was necessary for the purpose of carrying out the trust created by the will, and in *Corse* v. *Chapman,* 153 N. Y. 473, a testator had given an express power of sale of his unimproved and unproductive real estate, but that fact was held not to destroy an implied power of sale of his productive real estate.

The next question to consider is whether there was or was not any implied power of sale in the will of Darius C. Howell.    That no particular form of words is required to constitute an implied power of sale has been too often held to call for the citation of any authorities.    Such a power,

if it exists, must be derived either from language in the will, which necessarily implies its exercise, or where the use of such a power is essential to the carrying out of the objects and purposes of the testator as in the case of *Harrison* v. *Denny, trustee,* 113 Md. 520; or where it is manifest from an examination of the entire will that it was the intent of the testator that such a power should be vested in and exercised by his executor or trustee.   The doctrine of implied powers of sale has been carefully considered by this Court in the recent case of *Schloendorn, et al., Trustees,* v. *Schmidt,* 115 Md. 74; and all that is requisite in the present case is to consider the doctrine as there laid down as applicable to the facts presented by the record in this case.

In the residuary clause of the will of Mr. Howell, after making the provision for the income of his widow, occurs the following clause:

"And in trust, in the second place, after making the payments hereinbefore in this item of my will directed to be made, to invest the net surplus of the income of the property mentioned in this fifth item, or residuary clause, in good, safe securities, always giving the preference to ground rents paying six *per centum per annum* on the amount of the purchase money therefor, or real estate paying a like *per centum*, clear of taxes and expenses, to be held in trust for the same uses and purposes mentioned in this item, and in like manner to invest the proceeds of the sale of any real estate or leasehold or personal property that may be sold by them."

It is to be observed that the term "in like manner to invest the proceeds of the sale of *any* real estate of leasehold" property is not limited either to the Charles Street avenue property, or to any balance which may be left, or arise from the sale of property sold for the purpose of paying a deficiency in the income of his widow.   It is therefore broader in scope and effect than either of the cases in which express authority is given for the making of sales.   The many and varied character of the trusts in the will are such that it can not be seriously said that there are no active duties for the trus-

tee to perform, and the very terms of the will necessarily provide a point where the duties of the trustee will involve a division of the estate, to accomplish which a sale of much, if not all of his property will be inevitable. The present case therefore comes distinctly within the line of adjudications which sustain the existence of the implied power of sale in a trustee. *Schloendorn* v. *Schmidt,* 115 Md. 74; *Smith* v. *Haynes,* 202 Mass. 531; *Varick* v. *Smith,* 69 N. J. Eq. 505; *Wood* v. *Lembeke,* 72 N. J. Eq. 651; *Casselman* v. *McCooley,* 73 N. J. Eq. 253; *Salisbury* v. *Slade,* 160 N. Y. 289; *In re Curtis,* 26 R. I. 580; *Boston Safe Dep. & Tr. Co.* v. *Mixter,* 146 Mass. 103.

The authority given "to invest the proceeds of sale of *any* real estate," at once differentiates the present from the cases of *Ball* v. *Safe Dep. Co.,* 92 Md. 503, and *Murphy* v. *Coale,* 107 Md. 198, in each of which the will under consideration contained express language inhibiting the sale of certain property which had been attempted to be sold.

The conclusion is irresistible that under the will of Darius C. Howell there was an implied power of sale which could be properly exercised by the appellee, as trustee appointed by the codicil to his will. The decree of the Circuit Court No. 2 which appointed the Safe Deposit & Trust Co., trustee, in this suit was merely confirmatory of the appointment made by the will and codicil. There could be no additional powers vested in it beyond those conferred by the will, even though the power of sale was in terms conferred, and sales were authorized to be made from time to time and at such times as the trustee might see fit, subject to the approval and ratification of the Court. The fact that the decree appears to have been founded upon the Act of 1868, instead upon the implied power contained in the will, is immaterial since the trustee did in fact possess the power.

From the date of the decree the Trust Company proceeded in the administration of the trusts upon the assumption that since the Court had taken general jurisdiction of the trust

estates, it was acting in its capacity of trustee, by virtue of the decree, not by virtue of any power granted to it by the will. It accordingly made and reported in all about ten sales of various portions of the estate before the sale now in question, and no objection was raised in any of them to the sufficiency of the decree. In the meantime this Court had decided the case of *Ball* v. *The Safe Deposit & Trust Co., supra,* but notwithstanding that fact, the appellee continued from time to time to make sales as under the authority of the decree, and did not claim to derive any power of sale from Mr. Howell's will, and never did set up any such claim until its authority was questioned in the present case. It had not even asked the Court, under the jurisdiction of which it was acting, to construe the will and declare the existence of the implied power of sale.

In this case, however, we are not concerned with the course of the trustee. The only question is, can that trustee now make a good title to the purchaser of "Belle Grove"? The trustee was validly appointed by the testator, and that appointment was further sanctioned by a decree of a Court of competent jurisdiction, all parties in interest who were *in esse* at the time when the proceeding was begun were parties to the cause, the property of the trust estate was within the jurisdiction of the Court, the will which created the trusts then being administered by the trustee under the supervision of the Court contained an implied power of sale, and the sole question remaining is, did the erroneous assumption of the trustee that it was acting under the decree of the Court which had assumed jurisdiction of the administration of the trusts, when in fact its power came from the will, invalidate the sale to the appellant. That question is settled so far as Maryland is concerned by the case of *Philbin* v. *Thurn,* 103 Md., on page 349 and the cases there cited. Briefly stated the principle is, that "where one having various capacities executes an authority delegated to him in one of those capacities, the law will attribute the act to

the proper authority although the person does not profess to exercise it in virtue of that particular power."

The order appealed from will be affirmed.

> *Order affirmed, costs to be paid by the trustee out of the estate in its hands.*