# REVOC COMPANY *v.* CLARA MOULTON THOMAS ET AL., TRUSTEES

[No. 55, October Term, 1940.]

*Decided December 18th, 1940.*

The cause was argued before BOND, C. J., PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*William B. Davidson,* for the appellant.

*Charles McHenry Howard,* with whom was *Hunter H. Moss* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court No. 2 of Baltimore City, entered upon a special case stated, in the nature of a bill for specific performance requiring the appellant (defendant below) to consummate its contract for the purchase of a lot of ground located in Baltimore City from the appellees, which the appellant had refused to perform, upon the ground that the trustees who made the sale by virtue of the will of their testator were not vested with the power to validly and effectively sell and convey the property in question, under the authority conferred upon them by said will.

The agreed statement of facts sets forth: That the testator, George C. Thomas, was engaged in the business of acquiring, developing and selling real estate, and that he died August 11th, 1930, leaving a will and codicils thereto, the same having been duly probated in the Orphans' Court of Baltimore City. That the plaintiffs below are the duly appointed and qualified trustees under the authority of said will, and that the estate of the testator consisted of securities and cash of about $29,000, leasehold properties appraised at about $68,000, and real estate and ground rents of about $365,000 in value; such real estate and leasehold property consisting of a large number of separate parcels.

The contract of sale in question is filed as an exhibit with the statement, and embraces the usual provisions as to clear and marketable title. It describes the property sold as being a fee simple lot, unimproved except as to a five-car garage, with a frontage of 140 feet on the east side of Wickford Road; the agreed purchase price being $5000.

A copy of the will and codicils annexed thereto is in the record, and, under the provisions of the same, the trust thereby created is one designed to continue for the life of the testator's wife, the life of his son, and there-

after until the youngest of the son's children shall attain the age of twenty-one, with alternative limitations over if the son should leave no issue.

The only clauses of the will with which we are concerned for the purposes of the instant case are found in the eighth and tenth paragraphs thereof, as follows:

Paragraph eight creates a trust of "All of the rest and residue of my estate, real, personal and mixed, wheresoever situate," and directs the trustees "to collect the rents, issues and profits thereof, to apply the same in the first place to the payment of all taxes and expenses incident to the management of said property in the manner in which in the judgment of said trustees its productiveness will be best maintained," and paragraph ten is as follows: "I do further give to the several trustees named in this my last will and testament, and to their successors in the said trust, and to my executors hereinafter named, and to the survivor of them, and to the executors, administrators and assigns of the survivor, all power which may be necessary for preservation, direction, repair, management or profitable use of any property, real, personal or mixed, devised or bequeathed by me, and remaining from time to time under their or his control, until such time as their respective duty or duties of each of them in relation to the said trust and property shall be performed."

It will thus be seen that under the provisions of the will, the testator vested in the trustees named therein a substantial estate, which the record shows is principally comprised of a number of separate parcels of real and leasehold properties. And while the trustees are charged with the duty of managing the estate over the possible period of many years, nevertheless the testator did not clothe them with an express power to sell and convey any of said properties during the course of such control and management.

The question before us, therefore, is whether, as gathered from the quoted paragraphs of the will, an implied power to sell and convey any of said properties,

pending the period of the trust, is vested in said trustees. That question has been the subject of a number of decisions by this Court, which have been carefully collected and referred to by Mr. Miller in his work on the *Construction of Wills* at section 185, under the caption: "Implied powers of sale," wherein it is stated: "A power to sell property of a trust estate may be conferred upon the trustee by implication. It is not required that there should be an express authority given to a trustee to enable him to sell. The general principle is that if a sale is necessary to the execution of the trust, it will always be inferred that the testator meant to give every power which may be necessary for his declared purpose. A power of sale will be implied wherever duties are imposed upon the trustee which cannot be performed without the power; hence it is said that any will which imposes such duties upon a trustee necessarily creates a power of sale in the trustee; and it will be presumed that the testator intended that the trustee should sell, but that he omitted, through mistake or otherwise, to confer an express power. This principle has been applied in a number of cases where a power to invest has been given to trustees."

It will be noted from the quoted excerpts of the will before us that no express duty to "invest" any part of the estate is imposed upon the trustees. However, in paragraph eight, reference is made "to the management of said property in the manner in which in the judgment of said trustees its productiveness will be best maintained"; and in paragraph ten, it is significant that the language used is that the trustees are vested with: "all power which may be necessary for * * * management or profitable use of any property * * *." When, therefore, it is recalled that in the instant case the testator was a dealer in and developer of real estate, who at the time of his death was the owner of many real and leasehold properties, it is but a reasonable inference that he was fully cognizant that for the profitable use and practical management of his estate over a long period of years, it might become

necessary to sell some, if not all, of said property. The property involved in this appeal is practically unimproved, and its present sale is illustrative of the above deduction; because to make it productive to its full capacity would imply that the trustees should either erect improvements upon it, in the absence of express power to improve or develop it; or sell it, in the absence of a like power.

Property values do not remain stationary, especially in urban localities, and it is hardly conceivable that a testator of such extensive real estate holdings as those indicated by the record before us, intended that the trustees of his estate would remain powerless to cope with changing conditions, reasonably inevitable, throughout the long period of the trust he created. In 28 *Am. & Eng. Encyc. of Law* (2nd Ed.) pp. 1002, 1003, it is said: "Although no express power of sale be conferred by the instrument creating the trust such power will be implied wherever duties are imposed on the trustee which cannot be performed without it, or, in other words, wherever it can be gathered from the instrument that the grantor must have intended that he should have such power, and in such case no previous application to the court is necessary. * * * But the power is not to be implied unless it is manifestly intended or necessary to the execution of the trust."

"No particular form of words is necessary to create a power of sale. Any words which show an intention to create such power, or any form of instrument which imposes duties upon a trustee that he cannot perform without a sale will necessarily create a power of sale in the trustee." 2 *Perry on Trusts,* secs. 764, 766; *Hill on Trustees,* 471.

The foregoing general principles have been applied to numerous cases coming before this court, and while in none of them do we find the same phraseology used, in defining the duties of the trustee, as that employed in the instant case; and it is apparent that every case involving the question of implied power must be decided in the

light of the peculiar facts incident thereto; it may be observed that the controlling motive which should and must guide in the decision of analogous cases, is that of ascertaining the intention of the creator of the trust.

In the case of *Schloendorn v. Schmidt*, 115 Md. 74, 80 A 309, 312, the testator, after making a provision in his will for the benefit of a sister, devised his residuary estate in trust to invest and reinvest the same, and to pay the net income therefrom to his wife for and during the term of her natural life, and upon her death to pay such income to his daughter and son until they reached the age of eighteen and twenty-one years, respectively. Upon the daughter reaching the age of eighteen years, the wife being deceased, she was entitled to receive one-half of the corpus of the trust estate, and the son was entitled to receive the remaining one-half upon attaining the age of twenty-one years. No express power of sale was vested in the trustees, but upon a bill filed for the specific performance of a contract for the sale of an unimproved lot pertaining to the trust estate, entered into by and between the trustees and the defendant purchaser, this court, in reversing the lower court, said: "By the will, upon the death of the testator, the legal title in the estate so devised to the trustees became vested in the trustees with directions to them to pay over the net income arising from the estate to the widow so long as she lived, and then to the daughter and son as provided in the will. The amount of income to be derived from the estate so devised to the trustees is an important feature of the will, for, by the provisions of the will, the widow receives from the estate of her husband only the income from the trust estate so devised by the second clause of his will, and it is but this income that the daughter and son receive from said estate until they reach the age of eighteen and twenty-one years, respectively. Thus it is important that the estate shall consist of productive property, and that no part thereof shall remain unproductive. We therefore think that it can be inferred from the power given, under the will, to the trustees 'to invest

and reinvest, in their judgment and discretion the said rest, residue and remainder' of his estate, that it was the intention of the testator to confer upon such trustees the power to sell, in their judgment and discretion, the property of the estate, real or personal, * * * and to invest the proceeds thereof in other property or investments."

As indicated, no reference to investment by the trustees is made in the will before us in connection with the duties imposed upon the trustees. But notwithstanding that variance between the language used in the latter will, and that used in the *Schloendorn* will, the two cases are analogous in that in the instant will a sister of the testator is provided for through the payment of an annuity of $600 for life, to be derived solely from income, a son is partially provided for through the payment of an annuity of $3600 to be derived from income only, and the widow is partially and principally provided for through the payment to her of the remaining income derived from the estate, until her death or remarriage.

It is true that, based upon the magnitude of the instant estate, it is both possible and probable that the trustees will be able to carry out the intention of the testator in respect to the payment of the above annuities, and also pay to the widow a substantial annual income with the remaining net income accruing from the trust estate. But it is also not beyond the realm of possibility, that, with steadily increasing tax demands in various forms, levied upon every species of property, by local, state and federal authorities, the day is not far distant when property, especially real estate, in many instances will prove a liability instead of an asset to the owner.

The condition to which we have referred was apparent before the death of Mr. Thomas, and it is hardly reasonable to suppose that he could have contemplated no disposition of any of his real estate over the long period of time during which it was possible for the trust he created to endure. Obviously the widow had a right to renounce the will, but this the record shows she did not do. By

her failure to renounce she is precluded from now receiving any part of the corpus of the trust estate during her state of widowhood. That circumstances makes it all the more evident that the primary intent and purpose of the testator was that the trust estate be so managed by the trustees as to secure the best possible income from it as a whole; and, to accomplish that purpose, it would seem but logical that it was his intent that his trustees be empowered to sell and convey any part of the property pertaining to the trust, whenever in their discretion it was deemed for the best interest of the trust estate.

In the case of *Preston v. Safe Deposit Co.*, 116 Md. 211, 81 A. 523, 525, the trustee, assuming that it had no power of sale although it was authorized to invest the proceeds of sale, obtained supposed authority from a court of equity, from time to time, for the sale of properties pertaining to the trust. It was there held that the decree of the court which appointed the trustee to sell the property then involved was merely confirmatory of the appointment made by the will, and that there could be no additional powers vested in the trustee beyond those conferred by the will. This court, however, approved the doctrine of implied power as laid down in the *Schloendorn* case, and it was there stated "that no particular form of words is required to constitute an implied power of sale has been too often held to call for the citation of any authorities. Such a power, if it exists, must be derived either from language in the will, which necessarily implies its exercise, or where the use of such a power is essential to the carrying out of the objects and purposes of the testator, as in the case of *Harrison v. Deny, Trustee,* 113 Md. 520, 77 A. 837; or where it is manifest from an examination of the entire will that it was the intent of the testator that such a power should be vested in and exercised by his executor or trustee." *Carter v. Mullin,* 123 Md. 327, 91 A. 154.

In *Restatement of the Law,* 1 *Trusts,* sec. 190-B, the same principle as that adopted in the cited cases is thus stated: "The trustee can properly sell trust property if

(a) a power of sale is conferred in specific words, or (b) such sale is necessary or proper to enable the trustee to carry out the purposes of the trust, unless such sale is forbidden in specific words by the terms of the trust, or it appears from the terms of the trust that the property was to be retained in specie in the trust."

*Decree affirmed, with costs to the appellees.*