ANNIE EUGENIE SCHLOENDORN and ALBERT B. FAUST, Trustees, *vs.* CHARLES E. SCHMIDT.

*Trusts and trustees; powers of sale; by implication; unproductive land; specific performance. Appeals; practice; uncontradicted statement in oral argument.*

A testator in his will, by its second clause, disposed of his estate as follows: "All the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever situated or being, I give, devise and bequeath as follows:—to my wife, and my brother-in-law, and the survivor of them, in trust and confidence, to invest and reinvest said rest, residue and remainder of my estate, in their judgment and discretion, and pay the net income therefrom arising half-yearly to my wife, during the term of her natural life, and after her death to my brother-in-law, in trust and confidence to invest and reinvest said rest and residue, etc., in his judgment and discretion, and to pay the net income therefrom arising to my two children, share and share alike, etc.; at the arrival of my daughter to the age of eighteen the trust as to her share shall cease, and she shall be entitled absolutely to one-half of said rest, residue and remainder of my estate; and at the arrival of my son to the age of twenty-one the trust as to him shall cease, and he shall be entitled absolutely to his one-half of said rest and residue and remainder of my estate." The trustees named in the will had entered into a contract for the

sale of certain of the real estate, a bill by them against the purchaser for specific performance having been filed and dismissed, upon .appeal it was *held,* that the will conferred upon the trustees the legal title to both the real and personal estate, with power to sell.and convey the same.            ·p. 80

In oral argument, before the Court of Appeals, the uncontradicted statement was that the land contracted to be sold was unproductive and unimproved; it was described in the bill as having been sold subject to the terms of a deed, filed with the bill and made part thereof. One of its. restrictions was that no dwelling should be erected thereon costing less than $7,000. The sale of the property. was for $3,000. *Held,* that it could be assumed that the buildings and improvements required by the deed had not been built and that the land had remained unimproved and unproductive.            p. 83

It was the intention of the testator to confer upon the trustee the power to sell, in his judgment and discretion, the property real or personal, including the property of which the testator died seized and possessed, as well as any property thereafter acquired by the trustees, and to invest the proceeds thereof in other investments; and the contract entered into by them, with the appellee, for the land mentioned in the will, should be specifically enforced.            p. 84

*Decided February 23rd, 1911.*

Appeal from the Circuit Court No. 2 of Baltimore City (STOCKBRIDGE, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*John H. Morgan* and *S .S. Field,* for the appellants.

*Edward M. Hammond* (with whom were *Rufus Gill & Son,* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case the appellants, trustees under the will of Frederick W. Schloendorn, filed their bill·in the Circuit Court No. 2 of Baltimore City against the appellee, Charles R. Schmidt, in which they alleged that Frederick W. Schloendorn died on the 5th day of March, 1909, seized and possessed of real and personal estate and leaving a last will and testament duly executed to pass both real and personal property. After providing for the payment of his debts, the testator, by the first item of his will, bequeathed to his brother, William Schloendorn, and his brother-in-law, Albert B. Faust, the sum of two thousand and five hundred dollars in trust, to invest the same in their judgment and discretion for the benefit of his sister, Minna Schloendorn, to pay the net income arising from said investments by said trustees half-yearly to his sister, Minna Schloendorn, during the term of her natural life, and after her death the trust was to cease and the bequest was then to revert to his estate. By the second item of his will he disposed of the rest and residue of his estate as follows:

"All the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever situate or being, I give, devise and bequeath as follows:

"To my beloved wife, Anna Eugenia Schloendorn, of the City of Baltimore, State of Maryland, and my brother-in-law, Albert B. Faust, of the City of Ithaca, State of New York, and the survivor of them, in trust and confidence, to invest and re-invest said rest, residue and remainder of my estate, in their judgment and discretion, and to pay the net income therefrom arising, half-yearly to my beloved wife, Anna Eugenia Schloendorn, during the term of her natural life and after her death, to my brother-in-law, Albert B. Faust, in trust and confidence to invest and re-invest said rest, residue and remainder of my estate, in his judgment and discretion, and to pay the net income therefrom arising to my two children, Frederick C. Schloendorn and Elsa E. Schloendorn, share and share alike, half-yearly; at the arrival

of my daughter, Elsa E. Schloendorn, at the age of eighteen years, the trust as to her shall cease, and she shall be entitled absolutely, to one-half of said rest, residue and remainder of my estate; and at the arrival of my said son, Frederick C. Schloendorn, at the age of twenty-one years, the trust as to him shall cease and he shall be entitled absolutely to his one-half of said rest, residue and remainder of my estate."

They further allege that this will was duly probated and recorded in the office of the Register of Wills for Baltimore City, and that by it the title to the rest and residue of the testator's estate, real and personal, became vested in the plaintiffs with full and ample power to sell the same or any part thereof. That being so vested with this power, they, by a written agreement with the appellee, Charles R. Schmidt, dated March 26th, 1910, agreed to sell to him and he agreed to buy of them, at and for the sum of three thousand dollars, of which one hundred dollars was paid in cash and by the agreement the balance was to be paid within sixty days thereafter, a certain lot of ground with improvements thereon, being part of the rest and residue of said testator's estate, situated at Mount Washington, in Baltimore County, Md., and more fully described in the agreement, which was filed with the bill as an exhibit. The bill further alleged that the testator died seized and possessed of this property and stated how it was acquired by him. They also allege that they had performed all the terms and conditions of the agreement on their part to be performed and were ready and willing, upon the payment of the balance of the purchase money to them with interest thereon, to convey to the defendant the property so sold unto him, and as evidence thereof tendered to him a deed therefor, but he refused to pay the balance of the purchase money and accept the deed so offered him.

The prayer of the bill asks for the specific performance of the agreement and that a decree be passed requiring the defendant to pay the balance of the purchase money with interest thereon from the 22nd day of May, 1910, upon the

execution and delivery, by the plaintiff, to the defendant of a deed in fee of the property, mentioned in said agreement, subject to the conditions and restrictions therein specified.

The defendant answered the bill admitting all the allegations therein contained except the one wherein it is alleged that the plaintiffs were vested with the legal title and power of sale of the rest and residue of the testator's estate, of which the lot of land and improvements mentioned in the bill form a part, and allege that the plaintiffs were not able to convey unto him a good and merchantable title in the lands mentioned in the agreement.

Upon the submission of the case on bill, answer and replication, the learned Court below held that the will did not give to the plaintiffs as trustee, the power to sell the real estate mentioned in the bill and agreement therewith filed, and he thus dismissed the bill. It is from this order dismissing the bill that the appeal is taken.

There is but one question presented by this appeal and that is, does the will of Frederick W. Schloendorn confer upon the plaintiffs, as trustees named therein, the power to sell the lands mentioned in the bill, the same being a part of the rest and residue of the testator's estate, as described by him in the second item of his will?

"A trustee is seldom justified in selling the trust estate without an express or implied authority conferred upon him by the instrument of trust. No particular form of words is necessary to create a power of sale. Any words which show an intention to create such power, or any form of instrument which imposes duties upon a trustee that he cannot perform without a sale, will necessarily create a power of sale in the trustee." 2 Perry on Trusts, secs. 764 and 766; Hill on Trustees, 471. "Although no express power of sale be conferred by the instrument creating the trust, such power will be implied wherever duties are imposed on the trustee which cannot be performed without it, or, in other words, wherever it can be gathered from the instrument that the grantor must have intended that he should have such power, and in such

case no previous application to the Court is necessary. Thus a power of sale has been implied from a power to 'manage and invest' the estate to the best advantage." 28 *Enc. of Law*, 2nd ed., 1002-3.

"It is not necessary there should be a specific authority given to the trustee to enable him to sell. If a sale is necessary to the execution of the trust, it will always be inferred that the testator means to give to the person directed or empowered every authority which is necessary for his declared purpose." *Hill on Trusts*, 471, note 2.

It is contended by the appellee that the power conferred upon the trustees in this case, under the will of Frederick W. Schloendorn "to invest and reinvest said rest, residue and remainder of my estate, in their judgment and discretion, and to pay the net income, therefrom arising, half-yearly to my beloved wife, etc.," has reference only to the "trust moneys coming into the hands of the trustees" and confers no power upon them "to sell the real estate of which the testator took title during his lifetime" and which forms a part of "the rest, residue and remainder" of the estate. On the other hand, however, the appellants, trustees, contend that the language of the deed above given confers upon them the power to sell such real estate if in their judgment and discretion such sale should be made and the proceeds arising therefrom otherwise invested.

In this case there is no express power of sale given to the trustees named in the will, therefore, if the power exists at all it must be an implied power gathered from the language of the will, showing either an intention on the part of the testator to create such a power in the trustees or that in the performance of the duties imposed upon them by the will, the exercise of such power by the trustees becomes necessary.

In the case of the *Boston Safe Deposit and Trust Co.* v. *Mixter*, 146 Mass. 100, the testator by a codicil to his will directed that all the property and estate given to his daughter, Fannie L. Howard, in both the third and sixth clauses of his

will—the property in the sixth clause consisting of both real and personal property—should be paid over to the Boston Safe Deposit and Trust Company in trust for the benefit of his daughter "to be invested by said corporation as shall seem prudent and safe."

"The codicil deals with the trust fund, which might at first consist of both real and personal estate, as a single fund subject to the same disposition. It directs that at the decease of the daughter 'said estate so left in trust shall be divided among her children', and that, if she have no children, 'said sum so left in trust with said corporation shall be paid one-third to her husband', and 'the balance of said estate so left in trust shall be equally divided among her brothers and sisters.' In these provisions he is clearly dealing with the whole estate as a single fund, and they imply that the trustee is to make the provision according to his directions. It must do this so far as the fund consisted of personal property, and there is nothing to indicate that he intended that there should be any difference as to that part of the fund which at his death was real estate. The whole estate held in trust was 'to be invested by said corporation as shall seem prudent and safe', which implies that the trustee may find it prudent to change the investments."

Looking at the whole will, it seems to us reasonably clear that he intended to give to the trustees the legal title to both the real and personal estate with the power to sell and convey the same.

In the case of *Robinson* v. *Robinson,* 105 Me. 68, the Court was called upon to determine whether or not, by the terms of the will, in that case, the executors therein named, were authorized to sell certain lands forming part of the residuary estate. The clause of the will there asked to be construed, omitting the immaterial parts, was as follows:

"I give, devise and bequeath all the residue of my estate to my executors hereinafter named, in trust, however, to invest and manage the same, and to pay over the interest and income annually arising therefrom to my four children

during their lives, in equal shares * * * and on the death of any one of my children I direct that the one-fourth of the principal of said residuary estate * * * shall be paid to the children or other direct descendants of my said deceased child."

The Court in determining the question thus presented to it said: "It would seem that the words 'invest and manage' properly import and imply a power of sale unless a contrary intention on the part of the testator can be found in the will taken as a whole."

In *Harvard College* v. *Weld,* 159 Mass. 114, the Court says: "The foregoing considerations seem to us sufficient to show that the testator did not intend or attempt to make the land in question inalienable when it reached Harvard College; and that the first words of the trust imposed upon it 'to manage and invest' the same to the best advantage' carry a power to sell."

In the case of *Livingston* v. *Murray,* 39 Howard's Practice Reps. 102, the testator after providing for the payment of his debts and after making certain specific bequests, devised and bequeathed his property as follows:

"I give, devise and bequeath to Cambridge Livingston and Theodore B. Bronson, the executors of this my last will and testament * * * all the rest, residue and remainder of my *real* and personal estate, of what nature and kind soever, in *trust,* to invest the same in real or state securities * * * or in such productive securities as to them may seem meet, and after deducting all necessary expenses to pay the income thereof to my said wife, Eliza B. W. Murray, during her natural life. At the decease of my said wife if there should be any issue of my body begotten living, I direct my said executors to divide my property share and share alike equally among such issue." The estate left by the testator as in this case consisted of both real and personal property, and the question there presented was whether the executors had the power to sell and convey the real estate, which formed a part of the rest, residue and remainder of the

estate of the testator, as described in the above clause of his
will.   The Court there said: "The general rule is, that if a
sale of the real estate is necessary to carry out the purposes
of the testator, the power to make the sale will be given by
implication, as otherwise the intention of the testator might
be defeated.   In those cases it will be presumed that the
testator, having in view a duty imposed upon the executors
of his will, intended that he should sell his real estate, and
omitted, through mistake or otherwise, to confer express
power."

"To carry into effect the apparent design of the testator,
it would be necessary to convert the real into personal, as
in no other way could the estate be *invested* in any of the
securities mentioned in the will * * * I think that the tes-
tator intended that his real estate should become a part of the
investment, which he directed should be made, and it, there-
fore, follows, that he must have contemplated that the sale
would be required to effectuate such purpose."

Applying the general rule found in the above mentioned
authorities and cases to the terms and provisions of the will
of Frederick W. Schloendorn, we are of the opinion that
the will conferred upon the trustees therein named an implied
power to sell the real estate described in the bill and contract
of sale entered into by and between the appellants, as trus-
tees, and the appellee for the sale of said land, and for the
specific performance of which contract the proceedings below
were instituted.

The property here sold is described in the bill and con-
tract of sale as a lot of land situated at Mt. Washington,
Baltimore County, at the N. W. Cor. of Rogers Ave. and
Hill Top Road, being lot No. 1, of Sec. No. 2, or amended
plat No. 1 of said company, etc., and was sold subject to
the restrictions and conditions mentioned in a deed of said
property from said company to Frederick W. Schloendorn,
filed with the bill and made a part thereof. While the bill does
not so allege, yet in the oral argument before us it was stated
without contradiction that this land is unimproved and un-

productive. Moreover, one of the restrictions in the deed
above mentioned provided that no dwelling should be erected
thereon, costing less than seven thousand five hundred dollars.
The amount at which this property is now sold, as shown by
the contract of sale hereby sought to be enforced, is three
thousand dollars, therefore, we can reasonably assume, as
we were told in the oral argument, that the buildings and
improvements of the value required by the deed have not
been built and that the land still remains unimproved and
unproductive.

The testator, Frederick W. Schloendorn, after making a
bequest of twenty-five hundred dollars to his brother, Wil-
liam, and his brother-in-law, Albert B. Faust, in trust, for
the benefit of his sister, devised "all the rest, residue and
remainder" of his estate "real, personal and mixed and
wheresoever situate and being" to his wife and brother-in-
law, Faust, and the survivor of them "in trust and confidence
to invest and reinvest said rest, residue and remainder" of
his estate "in their judgment and discretion and to pay the
net income therefrom arising" to his wife for and during
her natural life, and upon her death the surviving trustee
is directed to pay such income to the daughter and son of
the testator until they reach the age of eighteen and twenty-
one years respectively; and upon the daughter reaching the
age of eighteen years, the trust as to her shall cease and she
at such time shall be entitled absolutely to one-half of said
estate, and upon the son reaching the age of twenty-one years
the trust as to him shall cease and he at such time shall be
entitled absolutely to his one-half of said estate.

By the will, upon the death of the testator, the legal title
in the estate so devised to the trustees, became vested in the
trustees with directions to them to pay over the net income
arising from the estate to the widow so long as she lived
and then to the daughter and son as provided in the will.
The amount of income to be derived from the estate so
devised to the trustees is an important feature of the will,
for by the provisions of the will, the widow receives from

the estate of her husband only the income from the trust estate so devised by the second clause of his will, and it is but this income that the daughter and son receive from said estate until they reach the age of eighteen and twenty-one years respectively. Thus it is important that the estate shall consist of productive property and that no part thereof shall remain unproductive. We, therefore, think that it can be inferred from the power given, under the will, to the trustees "to invest and re-invest, in their judgment and discretion the said rest, residue and remainder" of his estate, that it was the intention of the testator to confer upon such trustees the power to sell, in their judgment and discretion, the property of the estate, real or personal, including the property of which the testator died seized and possessed, as well as any property thereafter acquired by the trustees, and to invest the proceeds thereof in other property or investments. The real estate here sold was unproductive property, and the trustees in the exercise of their judgment and discretion thought it best to sell it and invest the proceeds thereof in property from which an income could be derived. To make this change of investment, it was necessary to make some disposition of the land, and as a sale is one of the methods by which such change of investment may be effected, we think the trustees under the will of Frederick W. Schloendorn had ample power to sell the lands sold by them unto the appellee in this case, and that the contract entered into by and between such trustees and the appellee for the sale of the said land should be performed.

For the reasons given the decree of the lower Court must be reversed.

*Decree reversed and cause remanded, that a decree may be passed in conformity with this opinion, costs above and below to be paid by the appellee.*