FLORENCE MORSE TIPPETT and ALICE McMILLAN TIPPETT, Executrices of the Last Will and Testament of John Francis Tippett, deceased,

*vs.*

FLORENCE MORSE TIPPETT, ALICE McMILLAN TIPPETT, JOHN MORSE TIPPETT, CHARLOTTE B. TIPPETT, ELIZABETH TIPPETT SPRINGER, ROBERT G. SPRINGER, MARION TIPPET BARCLAY and ALBERT C. BARCLAY, and FLORENCE MORSE TIPPETT, ALICE McMILLAN TIPPETT, JOHN MORSE TIPPETT, ELIZABETH TIPPETT SPRINGER and MARION TIPPETT BARCLAY, Trustees under the Last Will and Testament of John Francis Tippett, deceased.

*New Castle, July* 15, 1939.

116

*Daniel F. Wolcott,* of the office of Ward & Gray, for complainants.

*William S. Potter,* of the office of Ward & Gray, for defendants, Florence Morse Tippett, Alice McMillan Tippett, John Morse Tippett, Charlotte B. Tippett, Marion Tippett Barclay and Albert C. Barclay, both individually and as trustees.

*Charles F. Richards,* for Robert G. Springer and Albert L. Massey, Guardian *ad litem* of Elizabeth Tippett Springer.

THE CHANCELLOR: This is a bill to construe the last will and testament of John Francis Tippett, deceased. In construing a will, the real intent of the testator is the important question to be determined (*Maloney v. Johnson, ante p.* 77, 5 *A.* 2d 660), and in ascertaining that intent the

whole of the will must be considered and given some effect, if that be reasonably possible. *Phillips v. Phillips,* 10 *Del. Ch.* 314, 91 *A.* 452; *Maloney v. Johnson, ante p.* 77, 5 *A.* 2d 660; *Hill on Trustees,* 85.

General provisions in one part of a will may, therefore, be explained by other and more specific provisions, clearly indicating the intent of the testator. *Maloney v. Johnson, ante p.* 77, 5 *A.* 2d 660.

In the Third item of his will, Mr. Tippett provides:

"In the event of my death before that of my wife, Florence Morse Tippett, I bequeath to her all of my personal effects, my life insurance made payable to her, together with my stocks, bonds, houses and lands (except exemptions as hereinafter mentioned) to have and to hold as joint executrix with our children, my wife, Florence Morse Tippett, to have the income from all the properties, but in case such income is not sufficient for her comfort she is to have part of the principal in annual payments so that she may live in comfort but not in luxury."

The Fourth and Sixth items relate to kindred subjects.

By the Fourth item, the testator provides:

"It is my wish that the estate be managed by the executors hereinafter named to the best of their ability and I insist that any and all decisions affecting the estate must have the opinion of each of the executors, expressed in writing, and the majority to rule."

By the Sixth item he provides:

"It is my wish that my estate be carefully administered; that it be held intact but asking such changes in investments from time to time as the executors deem advisable, giving my wife the income during her life time and be divided equally among my four children, or their legal heirs at her death, or at any time before. However, I leave it to my executors to do that which seems best to the majority, with the understanding that proper legal provision be made to insure my wife's independence during her life."

Whether the testator bequeathed and devised his real and personal estate in trust during the life time of his widow is just as much a question of intention as any other provision of his will. Perhaps, in most cases, technical words are used in creating a trust, but no particular form of words is

necessary when such an intent is clearly apparent from the language used, and the rights given, and the obligations imposed. *Bennett v. Humane Impartial Soc.*, 91 *Md.* 10, 45 *A.* 888; *Edwards v. Packard*, 129 *Me.* 74, 149 *A.* 623, 625.

As was aptly said in *Hill on Trustees*, 83:

"It is one of the fixed rules of equitable construction that there is no magic in particular words; and any expressions that show unequivocably the intention of the parties to create a trust will have the same effect" as though the usual technical words had been used.

When the Third, Fourth and Sixth items of the will are read together, it is apparent that in the Third item the testator intended to devise and bequeath all of his "personal effects" and his "stocks, bonds, houses and land," with certain exceptions mentioned in the Fifth item of his will, to his wife, Florence Morse Tippett, and to their four children in trust "my wife, Florence Morse Tippett, to have the income from all the properties, but in case such income is not sufficient for her support she is to have part of the principal in annual payments so that she may live in comfort but not in luxury." He does not use the usual appropriate technical language for the creation of a trust in that item, but the bequests and devises to his wife, Florence Morse Tippett, are "to her * * * to have and to hold as joint executrix with our children."

In the Eighth item, he appoints his wife, Florence Morse Tippett, and all of his children, naming them, "executors" of his will, directing that they shall not be required to give bond, and stating "it being understood that the executors cannot act independently but only with a majority." In the Third item, he does not limit the right of his wife to the income from his estate to any specified period, but in the Sixth item he more clearly shows his intent to create a trust, merely during her life time. In that item he, also, provides for the disposition of the corpus of the trust estate after the death of his wife. He directs that his "estate be carefully administered; that it be held intact asking such

changes in investments from time to time as the executors deem advisable, giving my wife the income during her life time and be divided equally among my four children or their legal heirs at her death or at any time before." In the same item, he then adds "however, I leave it to my executors to do that which seems best to the majority with the understanding that proper legal provision be made to insure my wife's legal independence during her life." A reasonable construction of this language would seem to indicate an intent that the principal of the trust estate, and not the income therefrom, was to be equally divided among his children after the death of Mrs. Tippett, and that the trust was, therefore, to end at her death. That the testator was familiar with the words "trust" and "trustee" is apparent from both the preliminary part of his will and the Tenth item thereof. But, in view of its context, when read as a whole, it is apparent that the use of the word "executors" or "executrix" in place of those words does not affect the construction that the creation of a trust during the life of Mrs. Tippett, was intended with the power to exceed income under certain circumstances.

Florence Morse Tippett, the widow of the deceased, is not only the sole beneficiary of the income from the trust created by his will, but is, also, one of the several trustees, having the legal title to the corpus of that trust; that, however, does not affect the validity of it. Whatever the rule may be, when one person has both the entire legal and equitable title to property, the sole beneficiary of a trust can be one of several trustees of that trust. *Restat. of Trusts,* § 99; 1 *Perry on Trusts,* (7th Ed.) § 347; *Hill on Trustees,* 83; *In re Hennershotz's Estate,* 16 *Pa.* 435; *Mason v. Mason's Ex'rs.,* 2 *Sandf. Ch.,* (N. Y.) 432.

Some of the defendants contend that the various provisions of the testator's will are so indefinite and contradictory that it is impossible to ascertain his real intent. They further contend that, because of that fact, this court should

hold that he died intestate, and enter a decree accordingly. There may be extreme cases where the language of a will is such that it is absolutely impossible to ascertain its meaning, and a decree to that effect would have to be entered (1 *Page on Wills,* § 46; *Wise v. Rupp,* 269 *Pa.* 505, 112 *A.* 548, citing 1 *Jar. on Wills,* 453), but, as I view it, an intent to create a trusteeship is clearly apparent from Mr. Tippett's will, and this, therefore, is not a case of that nature.

At the time of Mr. Tippet's death, he was seized and possessed of real estate, of considerable value, both in the State of Delaware and elsewhere; and the only other question to be determined is whether, by the provisions of his will, he gave his trustees the power to sell that property. That no express power of sale was given is conceded, but it is contended that such a power is necessarily implied from the various provisions of the will. A trustee's authority to sell real estate is purely a question of testamentary intent, as expressed in the will creating the trust, and, therefore, need not necessarily be given in express and precise terms. When such a power is not expressly given, it may be implied when a clear intent to that effect is necessarily inferred from the language used, or if the scheme of the trust clearly requires a sale for its accomplishment. *Delaware Trust Co. v. duPont,* 22 *Del. Ch.* 166, 194 *A.* 31; *In the Matter of Mc-Caulley's Will,* 14 *Del. Ch.* 383, 127 *A.* 81; *Flinn v. Frank, et al.,* 8 *Del. Ch.* 186, 68 *A.* 196; *Leeds v. Sparks,* 8 *Del. Ch.* 280, 68 *A.* 239; *Hilles, et al., v. Hilles, et al.,* 11 *Del. Ch.* 159, 98 *A.* 296; *Schloendorn v. Schmidt,* 115 *Md.* 74, 80 *A.* 309; *Hill on Trustees,* 471, *note.*

In *Schloendorn v. Schmidt,* 115 *Md.* 74, 80 *A.* 309, 310, *supra,* quoting from 2 *Perry on Trusts, Sections* 764, 766, and *Hill on Trustees,* 471, the court said:

"No particular form of words is necessary to create a power of sale. Any words which show an intention to create such power, or any form of instrument which imposes duties upon a trustee that he cannot perform without a sale, will necessarily create a power of sale in the trustee."

It appears from the allegations of the bill that, at the time of the testator's death, he was not only seized and possessed of real estate, which in fact composed the greater part of his estate, but, also, owned corporate stocks and bonds of the approximate value of $15,000, and other personal property of the estimated value of $5,000; and all of his property was bequeathed and devised in trust for the purposes specified in his will. In the Third item, after bequeathing and devising his "stocks, bonds, houses and lands" in trust, Mr. Tippett also provides: "my wife, Florence Morse Tippett, to have the income from all the properties, but in case such income is not sufficient for her comfort she is to have part of the principal in annual payments." Standing alone, this provision has little, or no bearing on the question to be determined, as, at the most, no more than a limited power of sale to carry out the purposes of that item can be implied; and that is true whether the word "properties" is confined to real estate, or applies to both real and personal property. In the Fourth item of his will, Mr. Tippett provides "It is my wish that the estate be managed by the executors hereinafter named to the best of their ability * * *."

In the Sixth item he directs that his "estate be carefully administered; that it be held intact, but asking such changes in investments from time to time as the executors deem advisable * * *." Based on these provisions, it is contended that an unrestricted power to sell real estate is impliedly given the so-called executors of the testator.

Unless controlled by the context of the will, the word "invest" ordinarily means "to lay out (money or capital) in business with a view of obtaining an income or profit; to convert into some sort of wealth, other than money, as securities or real estate, with the expectation of dividends or rentals" etc. *Web. New Inter. Dict.* Broadly speaking, an "investment", therefore, usually means "the sum invested or the property purchased" by the laying out of "money

or capital in some species of property for income or profit."
*Web. New Inter. Dict.* Applying these principles, in the absence of any other controlling provisions, money laid out by the testator in houses or lands, and owned by him at the time of his death, may be said to be "investments."

The word "estate" is sometimes confined to land, or to some right or interest therein, but it is, also, frequently used in a broad and comprehensive sense, indicating an intent to include all classes of property belonging to the testator (1 *Bouv. Law Dict., Rawles Third Revision, page* 1075); and it seems to have been used by Mr. Tippett in that sense. Under the power given to make such changes in investments from time to time as may be deemed advisable, the so-called executors or trustees named in Mr. Tippett's will, therefore, have, by implication, the unrestricted power to sell both real and personal property. That is the only way such a change could ordinarily be made. *In re Curtis*, 26 *R. I.* 580, 60 *A.* 240; see, also, *Schloendorn v. Schmidt*, 115 *Md.* 74, 80 *A.* 309.

In the Rhode Island case, the trust estate consisted largely of personal property, but some real estate was, also, included. The court held that a power of sale was necessarily implied when the authority given was to "vary and change [investments] from time to time as they [the trustees] may think expedient." [26 *R. I.* 580, 60 *A.* 241.]

Let a decree be prepared in accordance with this opinion.