76 A.2d 315 (1950)
HARMAN
v.
EASTBURN.
Court of Chancery of Delaware, New Castle.
November 8, 1950.
Joseph Donald Craven, Wilmington, for Jennie Estelle Harman, plaintiff.
David A. Eastburn, Wilmington, for Horace Greeley Eastburn, individually and as executor and trustee.
*316 HARRINGTON, Chancellor.
Jennie Estelle Harman sought an accounting in this court from Horace Greeley Eastburn both as executor of Robert G. Harman, deceased, and individually.
Robert G. Harman died September 13, 1949, and his will in part provided:
"Second, I give and bequeath to my sister, Jennie E. Harman, the use of all my household furniture, pictures, ornaments, books and other articles now located in my home at No. 801 Broome Street, Wilmington, Delaware, for the full term of her natural life and no longer. I also give and bequeath unto her all of the net income of the dividends, rents and income *317 of my real and personal estate of which I shall die seized and possessed for and during the term of her natural life and no longer.
"Third, Subject to my sister's life estate therein, I direct my Executor, hereinafter named, or whosoever shall have the administration of my estate, to convert all the residue of my real and personal estate into cash * * *.
"Fourth, At and immediately after the time of death of my sister, Jennie E. Harman, and for the purpose of finally settling and distributing my estate, I hereby authorize and direct my executor hereinafter named to sell and dispose of any and all of the real estate of which I shall die seized * * *.
"And Lastly, I hereby appoint Horace Greeley Eastburn, Esquire, of Wilmington, Delaware, the Executor of this my Last Will and Testament, and in the event that he is unable to act as such Executor or is not living at the time of my death, then and in such case, I appoint his son, David A. Eastburn, Esquire, as the Executor of my will and I direct that no bond or other security be required of my Executor as such. I direct that my Executor be allowed for compensation for services under this Will six per cent of the gross principal sum of my estate and five per cent of the income thereof collected by him."
On September 29, 1949, letters testamentary on the estate of Robert G. Harman were duly issued to Horace Greeley Eastburn, the executor named in his will.
Mr. Harman owned a seventeen room house on Broom Street in the City of Wilmington, a small part of which was occupied by him and his sister during his lifetime. He also owned two small apartment houses, one on Franklin Street and the other on West Eighth Street in the City of Wilmington, each of which contained three apartments. There were no specific liens against the Broom Street house, but the apartment houses were subject to mortgage liens of $4,000 and $5,500 respectively, bearing five per cent interest.
At the time of Robert G. Harman's death his personal property was appraised for approximately $2,400, which included a bank account of $277.68, and was largely made up of furniture in the Broom Street house. He had no other investments.
The plaintiff, Jennie Estelle Harman, had a monthly life annuity of $80.00 which had been purchased by Robert G. Harman during his lifetime for their joint benefit but which composed no part of his estate.
In the complaint the plaintiff alleged:
(1) That Eastburn had never permitted her to have the proceeds of the annuity checks but pursuant to his direction she endorsed and delivered them to him from September 28, 1949 to March 28, 1950;
(2) That Eastburn had collected the rents from the apartment houses, devised to her for life, and which amounted to more than $200 per month but had never given her more than $40 a month from them;
(3) That Eastburn had refused to give her any information with respect to the use of the proceeds of the annuity checks or the moneys collected and expended in connection with said estate.
The plaintiff therefore sought an accounting for the assets, income and expenditures made for or on her behalf, or for or on behalf of the estate of Robert G. Harman, deceased, from September 29, 1949, until the time of the filing of the complaint. She also sought to have Eastburn removed as executor for his failure to account.
Horace Greeley Eastburn admitted in his original answer:
(1) That the monthly annuity checks payable to the plaintiff, though no part of the Robert G. Harman estate, were cashed by him but alleged that this was done at her request and that approximately $40.00 was retained by him from each check and used for her benefit. He also attached a detailed statement purporting to show all such receipts and expenditures;
(2) That with the plaintiff's consent he collected the rents from the real property belonging to Robert G. Harman at his death, amounting to over $200 a month, and used them both for the benefit of the *318 estate and the plaintiff and also attached a detailed statement;
(3) He alleged that he had kept the plaintiff advised of all receipts and expenditures and denied the right of this court to compel an accounting by him as executor or to remove him from office.
Eastburn in a supplemental answer in the nature of a cross bill also alleged in substance that Robert G. Harman by his will devised and bequeathed his property to him in trust to pay the plaintiff the "net income of the dividends, rents and income" of his "real and personal estate * * * for and during the term of her natural life and no longer"; but that the plaintiff, through an agent, was unlawfully collecting the rents from the real property. Eastburn, as trustee, by way of affirmative relief also sought to enjoin the plaintiff from so interfering with his rights.
All of Robert G. Harman's real property was badly in need of repair at the time of his death. The Broom Street house was equipped with two old coal burning heaters, but the cost of operating them was so great that he had used other means of heating the rooms occupied by him and his sister. Jennie Estelle Harman has continued to occupy the same rooms and has adopted the same method of heating them.
When all of the apartments were rented in the Franklin Street and West Eighth Street houses they produced a gross income of about $250.00 a month, but because of their condition and in order to keep them rented constant repairs were required in addition to the normal operating cost.
Excluding the mortgages on the apartment houses the probated debts against Robert G. Harman's estate amounted to more than $1,500 which included city and school taxes in excess of $900, and unpaid gas and electric bills for considerable sums. The funeral expenses amounted to $557.00 and were unpaid when this complaint was filed though the statutory period of one year for settling the estate, § 3852, Revised Code 1935, had not then expired. Eastburn, as executor, had no funds with which to pay these debts without selling the furniture in the Broom Street house or real property. He succeeded, however, in inducing the gas and electric companies to extend the time for the payment of their claims so that he could operate the apartment houses and Miss Harman's rooms in the Broom Street house could be heated and lighted.
The evidence clearly indicates that Eastburn, with the plaintiff's consent, took over the management of the apartment houses and used the rents from time to time for necessary repairs, for the payment of interest, taxes and insurance, and for other operating expenses. At the plaintiff's request and with her consent he cashed the monthly annuity checks, payable to her order, and gave her approximately $40 from each check. With her money he also paid the wages of Miss Harman's companion and other necessary expenses and told her he would let her have any additional money she needed at any time whether he then had it in hand belonging to her or not. She does not seem to have ever requested any larger monthly payments prior to the filing of this complaint and did not want to keep such money in her possession. For a time some rooms in the Broom Street house were rented and Miss Harman complained that money had been taken from her by some of the occupants. She did not live in great comfort but that would have been difficult in the Broom Street house without a considerable expenditure of money.
Horace Greeley Eastburn was a lawyer practicing in the City of Wilmington. Robert G. Harman was also a member of the bar and they were close friends. Eastburn was the executor of Mr. Harman's will. The plaintiff was over eighty years of age, infirm, without business experience and had implicit confidence in Eastburn until shortly before the complaint was filed. The change in her attitude was largely due to the interference of neighbors and perhaps of her companion.
Little testimony was produced on behalf of the plaintiff. I am satisfied, however, from Eastburn's testimony that he was honestly trying to save the estate for the plaintiff's benefit. He had advised the *319 sale of the Broom Street house in order to pay Mr. Harman's debts and that the income from the residue might be used to provide more comfortable living quarters for the plaintiff, but she was not willing for it to be sold.
The evidence indicates that Horace Greeley Eastburn individually was not only the agent of the plaintiff in the disbursement of such parts of the annuity checks as were retained by him, but that there was also a fiduciary relation between them and the facts were peculiarly within his knowledge. It follows that the plaintiff is entitled to an accounting for such sums. Maull v. Stokes, Del.Ch., 68 A.2d 200; Tharp v. St. Georges Trust Co., 27 Del. Ch. 216, 34 A.2d 253.
The second part of the complaint did not clearly show that an accounting for rents collected was sought from Eastburn, as executor, but his answer indicates that he so regarded it.
Ordinarily an executor is not entitled to the possession of the decedent's real property. By statute, however, if he be in possession he may collect the rents and use them as assets of the estate for the payment of debts. From any rents received he must keep the premises in tenantable repair. Section 3840, Revised Code 1935; In re White's Estate, 27 Del.Ch. 438, 37 A.2d 167. In most cases an executor or administrator can only be required to account before the Register of Wills for the county. Section 34, Art. IV, Constitution of 1897; Theisen, Adm'r v. Hoey, Del.Ch., 51 A.2d 61. This court has at least auxiliary and supplementary jurisdiction in some unusual cases where the powers of the Register of Wills would be wholly inadequate. Theisen, Adm'r v. Hoey, supra. But this case does not come within that rule.
The alleged right of this court to remove Eastburn as executor for his failure to account was not discussed in the brief of the plaintiff's solicitor and I shall assume that it has been abandoned. See also § 3811, Revised Code 1935.
Eastburn in his further answer in the nature of a cross bill alleged, however, that he was both the executor and a trustee for the plaintiff under the will of Robert G. Harman, deceased, and had collected the rents as such trustee. I do not understand that this was intended to take the place of any part of the original answer.
Standing alone a testamentary gift of the rents from real property to a person for life is equivalent to a gift of a legal life interest in such property. 69 C.J., Wills, 384, 385; 19 Amer.Jur. 484; see also Lorton v. Woodward, Ex'r, 5 Del.Ch. 505.
The functions of an executor and those of a trustee are separate and distinct, but depending upon the intent of the testator and on the rights and powers given, the executor of a will may also be a trustee by implication for some purposes, although no express trust is created. Roberts v. Downs, 28 Del.Ch. 293, 42 A.2d 315; Tippett v. Tippett, 24 Del.Ch. 115, 7 A.2d 612; see also Esser v. Chimel, 27 Del.Ch. 69, 30 A.2d 685. A mere testamentary direction to an executor to sell land does not give him the title in trust since a power is sufficient to permit him to perform his duties. Hilles v. Hilles, 11 Del.Ch. 159, 98 A. 296; Doe v. Shatter, 8 A. & E. 905; 1 Sugden on Powers, 7th ed., 129. No duties in the nature of a trust were imposed on the executor of Robert G. Harman after the settlement of the estate. See 3 Page on Wills, L. T. Ed. § 1183. Standing alone the fact that the "net rents" were given to the plaintiff is not enough to indicate that a trust for her benefit was intended. Nor does the fact that the executor was to be allowed as compensation for his services "six per cent of the gross principal sum" of the testator's estate and "five per cent of the income thereof collected by him" indicate any different intent. Eastburn was not directed to manage the estate or to collect and pay over the rents to the lifetaker. See Roberts v. Downs, supra; Tippett v. Tippett, supra; Morse v. Morse, 85 N.Y. 53. Moreover, the language of the Third Item of the will which directed the sale of the residue of the decedent's real and personal estate "subject to my sister's life estate therein" seems to indicate that a legal life estate was given her. *320 The distribution therein provided for was also one of the ordinary functions of an executor.
The argument of the plaintiff's solicitor in his brief does not require any consideration as to the extent of the plaintiff's rights in the personal property which had belonged to her brother.
The right to an accounting is ordinarily determined by an interlocutory order and the final decree settles the controversy between the parties. Terry, Adm'r v. Stull, 20 Del.Ch. 39, 169 A. 739. But Eastburn both as agent and as executor attached detailed statements to his original answer showing the amounts retained or collected and disbursed by him. The scope of his answer was not questioned and without objection he testified with respect to the correctness of the items contained in the statements, and the original accounts were admitted in evidence. He has, therefore, accounted to the plaintiff in both capacities and the claim in his answer that he could not be compelled to account, as executor, has been waived. Furthermore, since the hearing the plaintiff's solicitor has conceded to this court that nothing was due her from the defendant in any capacity, and my conclusion is in accord with that admission.
On the other hand the evidence indicates that the plaintiff owes Eastburn $53.95 which he has expended in excess of the rents collected, and five per cent commissions on such rents collected with her consent.
The prayer of Eastburn, as trustee, that the plaintiff be restrained from collecting the rents is denied.
An order will be entered in accordance with this opinion.