MARGARET H. FULWEILER, a Defendant Below,
Appellant,

*vs.*

P. LEA SPRUANCE, Plaintiff Below,
Appellee,

and

PRESTON LEA SPRUANCE, JR., MARGARET SPRUANCE DENHAM, WIL-
LIAM HALSEY SPRUANCE, and BLAINE T. PHILLIPS (Guardian
ad Litem for ALICE LEA SPRUANCE, II, LEA SPRUANCE, WIL-
LIAM H. SPRUANCE, JR. and For All Unborn Issue of PRESTON
LEA SPRUANCE, JR., MARGARET SPRUANCE DENHAM, WILLIAM
HALSEY SPRUANCE and ALICE LEA SPRUANCE, II), Defendants
Below,
Appellees.

*Supreme Court, On Appeal, July 28, 1966.*

*Vincent A. Theisen* and *Victor F. Battaglia,* of Theisen & Lank, Wilmington, for Margaret H. Fulweiler.

*John J. Morris, Jr.,* and *Howard L. Williams,* of Morris, James, Hitchens & Williams, Wilmington, for P. Lea Spruance.

*Blaine T. Phillips,* of Berl, Potter & Anderson, Wilmington, for Preston Lea Spruance, Jr., Margaret Spruance Denham, and William Halsey Spruance, and as Guardian Ad Litem for Alice Lea

Spruance, II, Lea Spruance, William H. Spruance, Jr., and for all unborn issue of Preston Lea Spruance, Jr., Margaret Spruance Denham, William Halsey Spruance and Alice Lea Spruance, II.

WOLCOTT, Chief Justice, CAREY, Justice, and DUFFY, President Judge, sitting.

WOLCOTT, Chief Justice: This is an appeal from the Court of Chancery which granted summary judgment for the plaintiff. The plaintiff (hereafter "Lea") and principal defendant (hereafter "Margaret"), formerly husband and wife, are now divorced. Named as additional defendants are three adult children of Lea and Margaret and the Guardian Ad Litem for a minor child, two minor grandchildren and the unborn issue of the four children (all hereafter "children").

Prior to the divorce of Lea and Margaret they entered into an Agreement under which it was provided, *inter alia,* that in the event Margaret obtained a final decree of divorce from Lea, he would hold separately for the purposes set forth in the Agreement one-half of all shares of Christiana Securities Company (hereafter "Christiana") common stock and one-half of all E. I. duPont deNemours & Co., Inc. (hereafter "duPont") common stock which he owned of record, and one-half of all shares of duPont common stock to which he was beneficially entitled under a certain trust terminating in 1955.

Under the Agreement Lea is required to hold the shares of stock separately and within five days of the receipt of any cash dividends upon such shares, to pay to Margaret for her support and the support of the children a sum equal to such dividend or dividends. In addition, Lea is required to transfer to Margaret as her sole property any shares of stock received by him as a stock dividend on the stock held by him separately under the Agreement.

The Agreement by further provisions, not material here, provides for the distribution of the separately held stock in the event either Lea or Margaret predeceases the other and, finally, after the death of both, for the ultimate division of the separately held stock among the children and their issue. This last provision explains the

presence of the children as defendants in this lawsuit for the protecttion of their interests in the income and ultimate disposition of the stock.

The stock holdings of Lea which give rise to this controversy are those of Christiana and duPont common stock. After the execution of the Agreement and the divorce of Lea and Margaret, those shares were actually held separately by Lea and, pursuant to the requirement of a supplementary Agreement, stop transfer orders were delivered to the transfer agents of the respective companies effectively preventing the sale or transfer of them by Lea.

The matter which gave rise to this controversy was the distribution in 1962, 1964 and 1965 by duPont and Christiana to their stockholders, pursuant to a Federal Court order, of General Motors Corporation common stock held by those companies. As a result of these distributions, Lea received as the registered holder of the separately held duPont and Christiana common stock 5946.32 shares of General Motors common stock. It is with respect to this General Motors stock that this lawsuit is concerned. Margaret claims it as her sole property under the Agreement, while Lea claims it as an addition to the separately held stock under the Agreement.

The main issue in this appeal is whether the General Motors shares now held by Lea shall be transferred to Margaret as her sole property or shall be retained by Lea and added to the shares separately held by him under the Agreement after selling sufficient of them to pay the capital gains tax assessed by reason of the distribution.

Several provisions of the Agreement are pertinent in connection with the arguments made. We quote them in full:

"1(b) (iii) If at any time the Husband shall receive any additional or other shares of stock through any stock split on any of the shares * * * which are to be held separately by him, or by way of merger or through any other means whereby additional or other shares of stock are received by virtue of the ownership of said shares to be held separately, except a stock dividend, such shares shall similarly be held separately by the Husband for the purposes hereinafter set forth.

"1(b) (iv) Whenever and from time to time the Husband receives any cash dividends upon any of the shares of stock to be held separately * * *, the Husband, within five days thereafter, shall pay unto the Wife a sum or sums equal to such dividend or dividends for her support and maintenance and for the support and maintenance of the minor children as hereinafter provided.

"1(b) (vi) Any shares of stock received by the Husband as a stock dividend or dividends on the shares of stock to be held separately by him hereunder shall be transferred and assigned unto the Wife as her sole property if she is living and, after her death, in the same manner and proportions as is provided herein for cash payments."

Margaret argues that the General Motors stock received as a result of the distribution is either a "cash dividend" which would mean that Lea under 1(b) (iv) is required to pay to Margaret within five days a sum equal to its value, or that the distribution constitutes shares of stock received by Lea as dividends on shares of stock held separately which means that Lea under 1(b) (vi) is required to transfer them to Margaret as her sole property.

Subparagraph 1(b) (iii) requires that if Lea receives any additional or other shares of stock by reason of a stock split, or by reason of a merger, or by any other means, that he shall hold such additional or other shares separately for the purposes of the Agreement. Expressly excluded from this requirement, however, are shares of stock received as a stock dividend which, under the provisions of 1(b) (vi), are required to be transferred to Margaret.

In *duPont v. duPont, Del.,* 208 *A.2d* 509, we held the divestiture of General Motors stock by the duPont Company was not a stock dividend. Margaret now concedes that the General Motors stock held by Lea was not received as a stock dividend and that she has no claim to it on this ground.

Margaret claims, however, that she is entitled to the stock under the provisions of 1(b) (vi) of the Agreement as shares of stock received by Lea as "dividends on the shares of stock" held

separately by him. By this contention Margaret seeks to construe 1(b) (vi) as requiring not only the transfer to her of stock dividends, but also the transfer to her of all stock of companies other than duPont and Christiana received by Lea. To adopt this contention would be to construe 1(b) (vi) as providing two exceptions to the direction of 1(b) (iii) which, in terms, provides only one, i.e., a stock dividend.

■ ■ We think the construction sought to be put on 1(b) (vi) is artificial and strained. This result may be reached only by separating the phrase "stock dividend" from the phrase "dividends on the shares." This may not be, however. Subparagraph 1(b) (vi) is obviously designed to provide for the enforcement of the one exception appearing in 1(b) (iii), that of a stock dividend. Such being so, the use by the draftsman of the singular and plural of the word "dividend" must be considered as merely an example of cautious draftsmanship since, otherwise, the result would have the effect of broadening the single exception of 1(b) (iii) far beyond its scope. In essence, it would be to rewrite the provision.

We are of the opinion, therefore, that Margaret is not entitled to the General Motors stock by reason of any provision of 1(b) (vi).

Margaret further contends, however, that she is entitled to the stock, or its equivalent in money, under the provisions of (1b) (iv). The argument is that the distribution of General Motors stock was the equivalent of a cash dividend paid to Lea.

The argument is based upon the fact that the recipients of the General Motors stock could have been taxed upon it as ordinary income but for 26 U.S.C. § 1111, and 30 Del.C. § 1148, which were enacted to give the recipients of the stock the tax benefit of treating it as a return of capital rather than as ordinary income. It is argued that this special treatment demonstrates that in fact the distribution of the General Motors stock was nothing more than an ordinary dividend.

We think, however, that the answer to the question is not to be found in the tax consequences which resulted from the stock distribution. The question of what in fact the distribution is finds its answer in the facts surrounding it.

■ In the general or ordinary sense a dividend is a distribution by a corporation to its shareholders of a share of the earnings of the corporation. 11 *Fletcher Cyclopedia Corporations,* § 5318. It ordinarily means a distribution to shareholders out of earnings, profits or undivided surplus. In Delaware dividends may be paid from profits or from net assets in excess of capital, but whatever the source of payment it is a return to the shareholders upon their investment. *Penington v. Commonwealth Hotel Const. Corp.,* 17 *Del.Ch.* 394, 155 *A.* 514, 75 *A.L.R.* 1136.

The 63,000,000 shares of General Motors stock distributed under court order by duPont was acquired by duPont more than forty years ago and was treated throughout by the duPont Company as an investment and as part of its income-producing assets. Following its acquisition, all of the dividends received on the stock were passed on to duPont shareholders less tax payments made by the Company. This investment was revalued annually by duPont to reflect its equity in General Motors Corporation. The General Motors stock prior to the ordered divestiture constituted approximately 25% of duPont's total assets.

Pursuant to the decree of the Federal Court, duPont distributed its General Motors stock to its shareholders. The distributions thus made were charged against duPont's Paid-In Surplus and its Earned Surplus was in no way diminished. Following each distribution, the market price of duPont stock dropped to reflect the diminution in asset value.

Prior to any distribution, each share of duPont stock reflected in its value the inclusion of the General Motors stock among the assets of duPont. It was stock reflecting this value which Lea and Margaret agreed would be held separately for her and her children's benefit. Following the distribution each share of duPont was of a lesser value by reason of the elimination of the General Motors asset, but each shareholder received in the form of General Motors stock that amount of value.

The directors of duPont in the resolutions adopted to comply with the decree of divestiture carefully refrained from describing the

distribution as a dividend, but in fact described it for what in fact it was—a partial distribution of duPont income-producing assets pursuant to the order of a court.

In *duPont v. duPont, supra,* we held that the divestiture by duPont Company of its General Motors stock was not a stock split, a stock dividend, or an 80% liquidating dividend as a preliminary step toward total corporate liquidation. But we did not pass upon the question of what in fact it was because the question was not before us.

██ We now reach the question and are of the opinion that the circumstances permit the sole conclusion that the divestiture by duPont of its General Motors stock was a judicially forced distribution of a portion of the income-producing assets of duPont. It was in fact a court-compelled return of capital to duPont's shareholders. As such, it is not a dividend, either of cash or stock, and, thus, is not the property of Margaret under the Agreement, but must be held separately by Lea for her benefit and the benefit of her children. This is necessary to keep the total value of securities held separately under the Agreement intact.

There is ample authority from other jurisdictions which, by analogy, support this conclusion. See In re *Bank of New York, Sup.,* 105 *N.Y.S.2d* 211; In re *Matthews' Trust,* 280 *App. Div.* 23, 111 *N.Y.S.2d* 405, aff. 305 *N.Y.* 605, 111 *N.E.2d* 731, and *Koehler v. Koehler,* 99 *N.J.Eq.* 141, 132 *A.* 751. Furthermore, by 12 *Del.C.* § 3526, the General Assembly has established as the policy of Delaware that a corporate distribution to a trustee shall be treated as an addition to principal to the extent that it is a diminution of an income-producing property. If it were held that the General Motors stock in question here was the sole property of Margaret, the result would be a diminution of the income-producing property held separately by Lea for the benefit of Margaret and the children. Such a result would be in violation of the policy of this State set forth in 12 *Del.C.* § 3526.

We therefore affirm the ruling below that the General Motors stock received by Lea as a result of the forced divestiture shall be held separately by him under the Agreement for the benefit of Margaret and the children.

One further point remains for our consideration. The Vice Chancellor held that the Agreement in fact established a trust in the separately held securities, including the General Motors stock which he directed be added to corpus. In this appeal Margaret attacks this ruling while Lea and the children uphold it.

While our ruling to the effect that the terms of the Agreement, whether it be a trust or not, require that the General Motors stock be held separately by Lea under the Agreement disposes of the main controversy between the parties, i.e., the ownership of the General Motors stock, we think we must pass upon this further question for the future guidance of the parties, particularly since the complaint seeks a declaratory judgment as well as instructions.

Margaret argues that the Agreement creates only a debtor-creditor relationship between Lea and herself and the children because it requires Lea to pay them a sum or sums equal to dividends received by him, and to provide by will for the continuance of the receipt by them of these amounts in the event of his death. She further argues that she and Lea did not intend to create a trust and that, in fact, she would not have agreed to Lea as trustee if a trust had been intended.

■■ When a question arises as to whether or not an Agreement creates a trust, the courts look objectively at the result to determine the matter. No particular form of words or conduct are necessary to the creation of a trust. The question in each instance is whether the kind of relationship known to the law as a trust has been created. 1 *Scott on Trusts* (*2nd Ed.*), § 24; *Tippett v. Tippett*, 24 *Del.Ch.* 115, 7 *A.2d* 612; *Roberts v. Downs*, 28 *Del.Ch.* 293, 42 *A.2d* 315.

■ Fundamentally, a trust exists when one person holds legal title to property subject to an equitable obligation to use that property for the benefit of another. 1 *Bogert, Trusts and Trustees,* § 1; 1 *Scott on Trusts* (*2nd Ed.*), § 2.3. Such is the rule in Delaware. *Delaware Land & Dev. Co. v. First & Central Presby. Church,* 16 *Del.Ch.* 410, 147 *A.* 165; *Bouree v. Trust Francais,* 14 *Del.Ch.* 332, 127 *A.* 56; *Wise v. Delaware Steeplechase & Race Ass'n,* 28 *Del.Ch.* 532, 45 *A.2d* 547, 165 *A.L.R.* 830.

In the case at bar all the elements exist to create the relationship known as a trust. Lea has set aside certain securities and by stop-transfer orders has made it impossible for him to deal with them as his own property. He has obligated himself to pass on the dividends received on these securities to his former wife and children. He has obligated himself to provide by will for the ultimate vesting of title to these in his children or their issue. In short, the Agreement divests Lea of any beneficial interest in the corpus, represented by the securities separately held, and has transferred that interest to his wife and children. The fundamental elements of a trust relationship thus exist.

■ The fact that neither Lea nor Margaret thought at the time of entering into the Agreement that they were creating a trust is immaterial if, in fact, what they did had that legal effect. 1 *Scott on Trusts (2nd Ed.)*, § 2.8, § 23; *Norris v. Norris (Ohio App.)*, 57 *N.E.2d* 254; *Levy v. Levy*, 309 *Mass.* 486, 35 *N.E.2d* 659.

■ We think clearly that the Agreement before us created a trust. There is a corpus, i.e., the separately held shares. There is a trustee, i.e., Lea, who holds bare legal title to the separately held shares. There are beneficiaries, i.e., Margaret, who is entitled to part of the income, and the children, who are entitled to part of the income, and ultimately to the shares, themselves. All the necessary elements are present and, as a result, Lea holds the separately held shares in trust for the purposes set forth in the Agreement.

We understand the parties do not disagree with respect to the result in the event the Agreement creates a trust and in the event the General Motors stock is to be added to that corpus. Since the judgment of the Vice Chancellor provides for that result, it is affirmed.